Aaron L. Agenbroad (State Bar No. 242613)
Catherine Nasser (State Bar No. 246191)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94105
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
Email: cnasser@jonesday.com

Matthew W. Lampe (admitted pro hac vice)
mwlampe@jonesday.com
Wendy C. Butler (admitted pro hac vice)
wbutler@jonesday.com
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAY MOUA, individually and on behalf of all others similarly situated, and for the interest of the general public,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a California Business Entity, form unknown, JOSEPH KOENIG, an Individual, VENKATASUBRAMANIAM IYER, an Individual, and DOES 1-200,<br><br>Defendants. | **Case No. C 10-01070 EJD**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS ON BEHALF OF PAGA MEMBER ALAN J. POLINI**<br><br>**DATE: JULY 19, 2013**<br>**TIME: 9:00 A.M.**<br>**CTRM: 4, 5TH FLOOR**<br>**BEFORE: HON. EDWARD DAVILA** |

NYI-4509987v4

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2013, at 9:00 a.m., or soon thereafter as the matter may be heard in Courtroom 4 before the Honorable Edward Davila, United States District Chief Judge, United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose California, Defendants International Business Machines Corporation ("IBM"), Joseph Koenig, and Venkatasubramaniam Iyer (collectively, "Defendants"), will and hereby do move the Court as follows:

Pursuant to Federal Rule of Civil Procedure 56(a), to dismiss with prejudice Plaintiff May Moua's ("Plaintiff's") representative claims under California's Private Attorneys General Act ("PAGA") on behalf of Alan J. Polini.  Specifically, this Court should dismiss all of Plaintiff's PAGA claims on behalf of Polini, which are based upon alleged violations of the California Labor Code, because Polini was properly classified as exempt from California's overtime and related pay requirements under the State's computer professional exemption.  Moreover, Plaintiff's meal break PAGA claims on behalf of Polini fail for the independent reason that Polini was not denied meal breaks.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declarations of Wendy C. Butler and Monica Lombardo, and the exhibits attached thereto, the pleadings and records on file herein, and such further written and oral evidence and argument as may be presented at the time of hearing.

NYI-4509987v4

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS & AUTHORITIES ........................................................................ 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 1

    A.    Polini's Job Duties .............................................................................. 1

    B.    The Instant Litigation ........................................................................... 4

ARGUMENT ............................................................................................................. 5

I.    All of Plaintiff's PAGA Claims on Behalf of Polini Fail Because Polini Is Exempt. ........ 6

    1.    Polini Met the Compensation Test. .............................................................. 7

    2.    Polini Met the Primarily Engaged Test. ...................................................... 8

    3.    Polini Met the Discretion and Judgment Test. .......................................... 9

    4.    Polini Met the Highly Skilled Test. ......................................................... 10

II.    Plaintiff's PAGA Claims Related to Meal Periods Independently Fail. ......................... 11

CONCLUSION ........................................................................................................ 12

NYI-4509987v4               - i -

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Addisu v. Fred Meyer, Inc.*,

5

    198 F.3d 1130 (9th Cir. 2000) .................................................................................... 5

6

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986) ........................................................................................... 5, 6

7

*Brinker Rest. Corp. v. Sup. Ct.*,

8

    53 Cal. 4th 1004 (2012) ......................................................................................... 11

9

*Celotex Corp. v. Catrett*,

    477 U.S. 317 (1986) ............................................................................................... 5

10

*Hibbs-Rines v. Seagate Techs, LLC*,

11

    No. C 08-05430, 2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) ............................. 6

12

*Medepalli v. Maximus, Inc.*,

13

    No. Civ. S-06-2774, 2008 WL 958045 (E.D. Cal. Apr. 8, 2008) .......................................... 10

14

*Musgraves v. Sears Holding Mgmt Corp.*,

    No. CV 11-0625, 2012 U.S. Dist. LEXIS 113989 (C.D. Cal. July 19, 2012) ......................... 6

15

*Sliger v. Prospect Mortgage, LLC*,

16

    789 F. Supp. 2d 1212 (E.D. Cal. 2011) ...................................................................... 7

17

STATUTES AND REGULATIONS

18

8 CAL. CODE REGS. § 11040(1)(A)(2) ........................................................................... 7

19

8 CAL. CODE REGS. § 11040(1)(A)(2)(f) ....................................................................... 9

20

8 CAL. CODE REGS. § 11040(2)(N) ............................................................................. 8

21

CAL. LAB. CODE § 201 .......................................................................................... 6, 7

22

CAL. LAB. CODE § 202 .......................................................................................... 6, 7

23

CAL. LAB. CODE § 203 ............................................................................................. 6

24

CAL. LAB. CODE § 204.3 .......................................................................................... 6

25

CAL. LAB. CODE § 204.3(h) ...................................................................................... 6

26

CAL. LAB. CODE § 226 ......................................................................................... 6, 7

27

CAL. LAB. CODE § 226.3 .......................................................................................... 6

28

NYI-4509987v4

- ii -

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

CAL. LAB. CODE § 226.6 ................................................................................ 6

CAL. LAB. CODE § 226.7 ................................................................................ 6

CAL. LAB. CODE § 510 ................................................................................... 6

CAL. LAB. CODE § 512 ............................................................................... 6, 7

CAL. LAB. CODE § 515.5(a) ............................................................................ 7

CAL. LAB. CODE § 515.5(a)(1) ....................................................................... 9

CAL. LAB. CODE § 515.5(a)(2) ....................................................................... 8

CAL. LAB. CODE § 515.5(a)(2)(A) .................................................................. 8

CAL. LAB. CODE § 515.5(a)(2)(B) ............................................................... 8, 9

CAL. LAB. CODE § 515.5(a)(3) ..................................................................... 10

CAL. LAB. CODE § 515.5(a)(4) ....................................................................... 8

CAL. LAB. CODE § 1174 ................................................................................. 6

CAL. LAB. CODE § 1174.5 .............................................................................. 6

CAL. LAB. CODE § 1194 ................................................................................. 6

CAL. LAB. CODE § 1198 ................................................................................. 6

CAL. LAB. CODE § 2699(a) ............................................................................. 6

29 C.F.R. § 541.207(a) (2001) ........................................................................ 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 .................................................................. 4

Federal Rule of Civil Procedure 56(a) ............................................................. 5

Wage Order 4-2001 .................................................................................... 6, 7

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff's PAGA claims on behalf of Alan J. Polini[1] – an SAP systems analyst for Defendant IBM – fail as a matter of law because Polini was exempt from California overtime and related pay requirements under the computer professional exemption.  This exemption is applicable to systems analysts and persons who develop functional specifications for computer systems and modify and test computer programs.  Polini, a systems analyst, did these very things.  He regularly consulted with customers to determine functional specifications for custom enterprise resource management systems, he made modifications to those systems, and he tested those modifications.  This is exempt work, and Defendants are entitled to summary judgment on Plaintiff's PAGA claims on Polini's behalf.[2]

## RELEVANT FACTUAL BACKGROUND

### A.    Polini's Job Duties

IBM employed Polini from 1974 until April 2011, and, during the time period relevant to this case, Polini worked as an SAP systems analyst.  (Polini Dep. 4:8-17, 55:4-6, 90:4-16.)[3]  SAP is a complex, enterprise-wide software that corporations use to manage business processes such as logistics, human resources, and financial processes.  (Polini Dep. 11:11-14, 49:1-5, *see also* Polini Dep. 121:14-17 ("Oh, yes.  No one person knows the whole system.  It's very complex").)  Polini was a subject matter expert (Polini Dep. 8:9-12) in SAP's warehouse module (Polini Dep.

---

[1] In addition to the claims on behalf of Polini, Plaintiff brings PAGA claims on her own behalf and on behalf of 24 other individuals (the "PAGA members").  Deposition testimony from the PAGA members demonstrates that they held many different jobs and performed widely varying duties.  For example, Polini and Plaintiff Moua had different jobs, worked in different business units, and reported up through different management chains.  The dissimilarity among PAGA members is not surprising, as Plaintiff did not seek class certification and thus was not required to show that her claims as to each of the 26 individuals (including herself) raise common issues of fact or law.  As indicated in the February 10, 2012 Supplemental Case Management Statement, as well as the February 19, 2013 Preliminary Pretrial Conference Statement, Defendants will file separate summary judgment motions as to Plaintiff's PAGA claims on behalf of the separate PAGA members.  Separate motions are necessary because the exempt status of each PAGA member is based on individualized facts.

[2] Plaintiff also brings claims against two individual defendants, Joseph Koenig and Venkatasubramaniam Iyer.  These defendants join in this motion, but have additional grounds for seeking dismissal of the claims against them.  They will assert those grounds in a single, separate motion addressing Plaintiff's PAGA claims on behalf of all 26 individuals.

[3] References to "Polini Dep." are to the transcript of Polini's deposition, relevant excerpts of which are attached to the Declaration of Wendy C. Butler submitted herewith.

NYI-4509987v4

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

119:5-8, 150:14-23), which companies use to monitor inventories in large warehouses and ship

product to customers or for internal operations (Polini Dep. 119:15-22, 120:15-121:2).

Polini primarily[4] worked on projects to customize SAP to meet the warehousing needs of

either internal IBM customers or external customers.  (Polini Dep. 14:15-16, 19:15-19, 131:9-14,

*see also* Polini Dep. 41:7-10 ("[I]t was all . . . custom.  You know, even though SAP was over an

umbrella, we got our fingers into it and made it custom to I.B.M.'s operating procedure,

manufacturer.").)  These projects, which lasted up to twelve months (Polini Dep. 116:19-22),

involved changes to SAP's underlying computer code (Polini Dep. 123:22-124:1) and changes to

the configuration of SAP's operating system (Polini Dep. 12:20-25, 41:11-24, 47:11-13, 49:23-

50:4, 55:21-23, 124:14-125:13).

At the outset of a project, Polini met with the customer to determine the functional

specifications for the project.  (Polini Dep. 55:7-16, 125:14-22.)  In other words, Polini needed to

develop an understanding of the customer's requirements – *i.e.* how the customer's warehouse

operations worked and what it needed from its SAP system to help it manage those operations.

(Polini Dep. 55:10-13, 125:19-22; *see also* Polini Dep. 126:6-14, 126:12-14, 20-22 (agreeing that

"customer requirements would vary, differ from project to project" and "that's why you have to

meet with the customer on each project").)  This was an interactive process, during which Polini

gathered information about a customer's needs, and the customer asked Polini for advice on how

SAP could be customized to meet those needs.  (Polini Dep. 128:18-129:9.)

Based on his consultations, Polini created a functional specification document that

"define[d] what is going to happen, what changes you're going to do."  (Polini Dep. 127:6-

128:17; *see also* Polini Dep. 127:22-128:10 (agreeing that his functional specifications were "the

basis for the changes that [programmers] were going to make to the SAP code").)  Because

---

[4] During the time period relevant to Plaintiff's PAGA claims as to Polini (December 9,
2008 through the end of his employment), Polini held two roles relating to SAP.  From January
2009 onward, Polini held a project based position; before this, he held an SAP production support
position.  (Butler Decl. Ex. B.)  For purposes of the instant motion, however, the positions are
substantially similar.  In both, Polini was a systems analyst.  (Polini Dep. 4:8-17, 55:4-6, 90:4-
16.)  In both, Polini spent most of his time modifying SAP operating system configurations to fit
customer needs.  (Polini Dep. 93:8-17.)  And, in both, he consulted with users to develop
functional specifications.  (Polini Dep. 55:1-16.)  These duties will be described in detail below.

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

customer requirements varied from project to project (Polini Dep. 126:17-19), Polini's functional

specifications likewise varied (Polini Dep. 128:15-17).  Thus, as he testified:

> Q:    . . . It's fair to say when you're making recommendations to
>       the customer on how SAP can be changed or configured,
>       you're making recommendations on how the system can be
>       set up to best meet the customer's business needs?
>
> A:    Yes.
>
> Q:    So do things like reduce cycle time.[5]  Correct?
>
> A:    Correct.  Right.
>
> Q:    To minimize the steps that users may have to take to use the
>       system?
>
> A:    Minimize the steps, improve the response time.
>
> Q:    Response time of the system?
>
> A:    Of the system.
>
> Q:    To make it faster, more efficient?
>
> A:    Yes.
>
> Q:    More reliable?
>
> A:    Yes.

(Polini Dep. 131:9-25; *see also* Polini Dep. 129:20-130:24, 136:14-137:11.)

    After he created the functional specifications document, Polini modified the

configurations of the SAP operating system to meet the client's unique needs.  (Polini Dep.

49:23-50:4, 55:21-23, 93:8-17, 122:20-21; *see also* Polini Dep. 127:6-11 ("We told the user what

we were going to do . . . and I'd go into SAP and do my configuration.").)  And there are multiple

ways that SAP can be configured to meet those needs.  (Polini Dep. 127:3-5, 129:4-9; *see also*

Polini Dep. 125:10-13 (agreeing that there are "hundreds of different configurations that could be

changed").)  As part of this process, Polini "wrote a lot of scripts," which are instructions to

automate processes.  (Polini Dep. 71:2-11; *see also* Polini Dep. 143:25-145:5.)  He testified:

> . . . I had a separate database, and I built this Catt script, and it said:
> Here's the process.  This is how I want the system to process these

---

[5] Cycle time refers to the process of conducting physical inventory of warehouse contents during a shutdown of the warehouse.  (Polini Dep. 129:10-130:20.)

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1

2

transactions.  Okay.  And the separate database had all the information and all the variables in it.  So when you kick off the Catt script, it looks at the database you identified, and it processes those transactions for you.

3

4     (Polini Dep. 144:18-24.)  In each case, Polini made determinations as to which CATT scripts

5     were necessary, and then he customized his CATT scripts and he tested them before putting them

6     into operation.  (Polini Dep. 145:6-146:9, 146:23-24.)

7          Polini's testing work extended beyond CATT scripts.  He developed test cases "to verify

8     that the changes you performed are producing the expected results" (Polini Dep. 138:9-14) – i.e.,

9     that the modifications to the system met "[t]he business needs and that the change worked"

10    (Polini Dep. 140:12-15; *see also* Polini Dep. 138:15-140:11, 141:14-23).  Polini created

11    functional test cases that tested particular system transactions (Polini Dep. 138:19-21) and that

12    ensured, among other things, that particular changes to one aspect of the system did not adversely

13    impact others (Polini Dep. 141:17-19; *see also* Polini Dep. 161:2-23 (testifying that he performed

14    "regression testing" to "make sure you didn't break something that you weren't supposed to

15    touch")).  He also created test cases for detailed user acceptance testing (Polini Dep. 139:6-13),

16    creating step-by-step instructions that allowed users to test various system processes (Polini Dep.

17    140:23-141:13).  Polini created different test cases for each project (Polini Dep. 140:9-11), and he

18    assessed whether the system passed his tests (Polini Dep. 140:6-7).

19         **B.      The Instant Litigation**

20         Plaintiff originally brought her Labor Code and PAGA claims on behalf of a putative class

21    of employees pursuant to Federal Rule of Civil Procedure 23.  (Am. Compl., Dkt. No. 45.)  On

22    December 9, 2011, Plaintiff moved for leave to file a Second Amended Complaint ("SAC") to,

23    *inter alia*, remove her class allegations under Rule 23 and pursue her PAGA claims for civil

24    penalties on behalf of herself and other employees without obtaining class certification under

25    Rule 23.  (Notice of Mot. and Mot. for Leave to File SAC, Dkt. No. 58.)  On January 31, 2012,

26    the Court granted Plaintiff's motion (Order Granting Mot. for Leave to File SAC, Dkt. No. 64),

27    and Plaintiff filed the SAC on February 1, 2012 (SAC, Dkt. No. 66).  As the Court has noted, the

28    body of the SAC provides scant factual support for Plaintiff's PAGA claims.  (Order Granting in

NYI-4509987v4                          - 4 -                          Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1  Part and Den. in Part Defs.' Mot. for Partial Summ. J. and Partial J. on the Pleadings, Dkt. No. 85

2  at 6 (noting that the "actual text of the [PAGA] cause of action is, for the most part, simply a

3  recitation of the statute without any real factual enhancement.").)  The SAC does state (¶¶ 14-16)

4  that Plaintiff is proceeding on a misclassification theory, and in a letter to the Labor Workforce

5  Development Agency ("LWDA") that is attached as Exhibit 3 to the SAC, Plaintiff identified by

6  name 29 individuals, including herself, on whose behalf she asserts PAGA claims.

7      On April 12, 2012, Defendants moved for partial summary judgment and partial judgment

8  on the pleadings, seeking to narrow the scope of Plaintiff's PAGA claims.  (Notice of Mot. and

9  Mot. for Partial Summ. J. and Partial J. on the Pleadings, Dkt. No. 70.)  In an order dated October

10 30, 2012, the Court granted that motion in part, limiting Plaintiff's PAGA claims to the

11 individuals ("PAGA members") identified in Exhibit 3 of the SAC, establishing December 9,

12 2008 as the beginning of the relevant time frame for the PAGA claims, and dismissing as time-

13 barred Plaintiff's claims on behalf of three employees.  (Order Granting in Part and Den. in Part

14 Defs.' Mot. for Partial Summ. J. and Partial J. on the Pleadings, Dkt. No. 85.)  Twenty-six PAGA

15 members (including Plaintiff) remain in the case.

16                                **ARGUMENT**

17      Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when

18 there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

19 matter of law.  *See* Fed. R. Civ. P. 56(a).  Where the moving party has met its initial burden of

20 showing that there is an absence of evidence to support the nonmoving party's case, the

21 nonmoving party may escape summary judgment only by demonstrating the existence of some

22 factual issue requiring trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Anderson*

23 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A scintilla of evidence or evidence that is

24 merely colorable or not significantly probative" fails to satisfy the nonmoving party's burden.

25 *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Rather, summary judgment is

26 precluded only if the nonmoving party demonstrates the existence of genuine disputes involving

27 evidence that would allow a reasonable jury to render a verdict for that party on an issue affecting

28

NYI-4509987v4                    - 5 -

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1  the outcome of the suit.  *See Anderson*, 477 U.S. at 248, 249.  Under these standards, Plaintiff's

2  PAGA claims on behalf of Polini should be dismissed in their entirety with prejudice.

3  **I.    All of Plaintiff's PAGA Claims on Behalf of Polini Fail Because Polini Is Exempt.**

4          Because PAGA does not create any substantive rights, Plaintiff must establish a violation

5  of one or more separate Labor Code provisions in order to recover civil penalties under PAGA.

6  CAL. LAB. CODE § 2699(a).  Plaintiff must prove "Labor Code violations with respect to each and

7  every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA." *Hibbs-*

8  *Rines v. Seagate Techs, LLC*, No. C 08-05430, 2009 U.S. Dist. LEXIS 19283, at *11 (N.D. Cal.

9  Mar. 2, 2009).  Here, Plaintiff alleges the following Labor Code violations as the basis of her

10  PAGA claims on behalf of Polini (and the other PAGA members):

11        •    Failure to pay overtime (Labor Code Sections 510, 1194, 1198) and failure

12              to properly compensate time off in lieu of overtime (Section 204.3)

13              ("overtime violations"),

14        •    Failure to pay premium wages for missed meal and rest periods (Sections

15              226.7, 512, Wage Order 4-2001) ("meal and rest break violations"),

16        •    Failure to provide accurate wage statements (Sections 226(a),(e), 226.3,

17              226.6) ("wage statement violations"),

18        •    Failure to maintain accurate records (Sections 1174, 1174.5)

19              ("recordkeeping violations"),

20        •    Failure to timely pay wages during employment and upon termination

21              (Sections 201, 202, 203, 204, 210) ("timely payment of wages violations").

22  (*See* SAC ¶¶ 69-74 & Ex. 3 (Docket Entry 66).)

23          But each of these Labor Code claims fails because Polini was properly classified as

24  exempt from California's overtime and related pay requirements.  *See, e.g.,* Wage Order 4-

25  2001(1)(A) (persons covered by the executive, administrative, or professional exemptions are not

26  subject to California's overtime requirements and meal and rest break requirements); CAL. LAB.

27  CODE § 204.3(h) (Section 204.3 does not apply to any employee exempt from the overtime

28  provisions of the California Wage Orders); *see also Musgraves v. Sears Holding Mgmt Corp.*,

NYI-4509987v4                                    - 6 -                      Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1   No. CV 11-0625, 2012 U.S. Dist. LEXIS 113989, at *48-50 (C.D. Cal. July 19, 2012) (granting

2   summary judgment to employer on plaintiff's claims for violations of Labor Code Sections 201,

3   202, 226, 226.7, & 512 because they were based on plaintiff's unsuccessful misclassification

4   claim); *Sliger v. Prospect Mortgage, LLC*, 789 F. Supp. 2d 1212, 1219 (E.D. Cal. 2011) (noting

5   that if the court ultimately found that plaintiffs are exempt employees, the claims for unpaid

6   minimum wages, meal and rest period violations, waiting time penalties, itemized statements

7   penalties, and unfair business practices should all be dismissed because they were derivative of

8   the claims based on misclassification).

9        Specifically, Polini satisfied California's computer professional exemption.  This

10   exemption applies to any employee who satisfies the following:

11   • Compensation Test:  The employee must be compensated at a level and in a manner that

12     satisfies thresholds established by the Department of Labor Standards Enforcement

13     ("DLSE");

14   • Primarily Engaged Test:  The employee must be primarily engaged in exempt computer

15     professional duties;

16   • Discretion and Judgment Test:  The employee must be "primarily engaged in work that is

17     intellectual or creative and that requires the exercise of discretion and independent

18     judgment;"

19   • Highly Skilled Test:  The employee must be "highly skilled and [ ] proficient in the

20     theoretical and practical application of highly specialized information to computer

21     systems analysis, programming, or software engineering."

22   CAL. LAB. CODE § 515.5(a); *see also* Wage Order 4-2001(1)(A)(3)(h), codified at 8 CAL. CODE

23   REGS. § 11040(1)(A)(2).  Polini satisfied each test.

24        **1.      Polini Met the Compensation Test**.

25        Polini met the first requirement because at all pertinent times he earned an annual salary

26   that exceeded $79,050, and this salary was paid at least once a month and in a monthly amount

27

28

NYI-4509987v4                                    - 7 -                      Case No. C 10-01070 EJD
                                                                            Defs.' Notice of Mot. and Mot. for Summ. J.
                                                                            as to Pl.'s Claims on Behalf of Alan J. Polini

1   that exceeded $6,587.50 per month.  *See* CAL. LAB. CODE § 515.5(a)(4).[6]  Polini's annual salary

2   between December 9, 2008 and June 30, 2010 was $80,892.00 (equating to a monthly amount of

3   $6,741.00), and his annual salary between July 1, 2010 and the end of Polini's employment was

4   $82,212.00 (equating to a monthly amount of $6,851.00).  (Lombardo Decl. ¶ 4.)  At all times,

5   IBM paid Polini on a semi-monthly basis.  (*Id.*)

6                    **2.      Polini Met the Primarily Engaged Test**.

7          Polini met the next requirement because he was "primarily engaged" in exempt computer

8   professional duties.  CAL. LAB. CODE § 515.5(a)(2).  The term "primarily" means "more than one-

9   half the employee's work time."  8 CAL. CODE REGS. § 11040(2)(N).  Further, exempt computer

10  professional duties include "[t]he application of systems analysis techniques and procedures,

11  including consulting with users, to determine hardware, software, or system functional

12  specifications."  CAL. LAB. CODE § 515.5(a)(2)(A).  Exempt duties also include "[t]he design,

13  development, documentation, analysis, creation, testing, or modification of computer systems or

14  programs . . . based on and related to user or system design specifications."  CAL. LAB. CODE

15  § 515.5(a)(2)(B).

16         Polini met these requirements.  He was a systems analyst.  (Polini Dep. 55:4-6 ("That's

17  what I refer myself to.").)  He regularly applied systems analysis techniques and procedures and

18  consulted with users to determine functional specifications.  *See* CAL. LAB. CODE

19  § 515.5(a)(2)(A).  As he testified:

20              Q:      BY [PLAINTIFFS' COUNSEL]:  Do you determine
                        hardware, software or system function specifications?
21

22              A:      Yes.

        Q:      And you did that by consulting with the users of the
23              software to try to determine what their needs were?

24              A:      The customer, yes.

25  (Polini Dep. 55:7-13; *see also* Polini Dep. 71:12-18, 90:4-10, 125:14-22, 126:6-14, 127:6-14.)

26  ───────────────
          [6] These are the requirements that were in effect between January 1, 2009 and the end
27  Polini's employment with IBM.  Between December 9, 2008 and December 31, 2008 (the
    remaining time period relevant to Plaintiff's PAGA claims as to Polini), the required amounts
    were lower.  *See* DLSE, History of Rate of Pay for Exemption for Computer Software
28  Employees, *available at* http://www.dir.ca.gov/dlse/LC515-5.pdf.

NYI-4509987v4                         - 8 -                    Case No. C 10-01070 EJD
                                                                 Defs.' Notice of Mot. and Mot. for Summ. J.
                                                                 as to Pl.'s Claims on Behalf of Alan J. Polini

Likewise, Polini "modif[ied] computer systems or programs" so that SAP met his client's requirements. CAL. LAB. CODE § 515.5(a)(2)(B). He testified:

> Q:   Did all the projects also require changes to the SAP configurations?
>
> A:   Yes.
>
> Q:   And you actually did the changes to the configurations?
>
> A:   Within my [warehouse] module.

(Polini Dep. 124:6-13; *see also* Polini Dep. 49:23-50:4, 55:21-23, 71:2-11, 93:8-17, 122:20-21, 125:10-13, 127:3-11, 144:18-146:9, 146:23-24.) Indeed, Polini spent the majority of his time on this function. (Polini Dep. 93:8-17 ("That was my main task.").)

Further, Polini engaged in "testing . . . of computer systems or programs." CAL. LAB. CODE § 515.5(a)(2)(B). He testified:

> Q:   And you created different test cases for each project. Correct?
>
> A:   Yes.
>
> Q:   And those test cases varied from project to project so that you could test to ensure that the business needs were being met. Correct?
>
> A:   The business needs and that the change worked.

(Polini Dep. 140:9-15; *see also* Polini Dep. 138:9-140:11, 141:14-141:23, 161:2-23.) In short, Polini satisfied the primarily engaged test.

### 3.   Polini Met the Discretion and Judgment Test.

Polini met the computer professional exemption's next requirement because he was "primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment." CAL. LAB. CODE § 515.5(a)(1). Discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a) (2001) (incorporated by 8 CAL. CODE REGS. § 11040(1)(A)(2)(f)). The term "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Id.*

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

Here, Polini's work was intellectual and creative, and it required the exercise of discretion and judgment. *See, e.g., Medepalli v. Maximus, Inc.*, No. Civ. S-06-2774, 2008 WL 958045, at *6 (E.D. Cal. Apr. 8, 2008) (finding work "intellectual" where the "the intellectual skills required to develop [code] varied depending on the needs of the client and the number of people working on the project"). Thus, Polini exercised discretion in determining system requirements and developing functional specifications, as "[c]ustomer requirements differ" (Polini Dep. 126:17-19), and his functional specifications thus necessarily "differ[ed] from project to project" (Polini Dep. 128:15-17). Likewise, there are different ways to develop and configure SAP to meet customer requirements and make the system faster, more efficient, and more reliable (Polini Dep. 127:3-5, 131:9-25), and Polini exercised discretion and independent judgment in "making recommendations on how the system can be set up to best meet the customer's business needs" (Polini Dep. 131:9-14). He also exercised discretion in evaluating whether to automate processes with CATT scripts as well as in developing and modifying those scripts. (Polini Dep. 145:20-25.) In addition, he exercised discretion in creating test cases (Polini Dep. 138:15-21, 139:6-16, 141:1-19), which differed from case to case (Polini Dep. 140:9-17), and in determining whether functions worked as designed to meet user requirements (Polini Dep. 138:15-21, 140:6-8).

Moreover, Polini acted independently. His supervisor worked in Minnesota, not California (Polini Dep. 9:5-16), and did not direct Polini's activities (Polini Dep. 98:20-99:1 ("I think once a month they're required to call me."); Polini Dep. 99:22-100:6 (supervisor "never helped" him perform his job)). And no manual gave Polini step-by-step instructions on performing his work. (Polini Dep. 50:10-12) (testifying that if there was a manual instructing on how to configure SAP, he "never saw it").) Thus, Polini satisfied the discretion and judgment test.

### 4.      Polini Met the Highly Skilled Test.

Polini met the computer professional exemption's final requirement because he is "highly skilled and [] proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, or software engineering." CAL. LAB. CODE § 515.5(a)(3); *see also Medepalli*, 2008 WL 958045, at *5 (test satisfied where plaintiff

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1    possessed advanced knowledge of "computer code, business applications, and data modeling").

2    Polini was a subject matter expert in SAP's complex warehouse module (Polini Dep. 8:9-12,

3    119:5-8, 150:14-23), and he developed this expertise through a combination of classroom

4    instruction and more than 10-years of work experience with SAP (Polini Dep. 18:19-24, 134:7-

5    18).  Further, as the foregoing suggests (*supra* at 2-4, 8-10), he was proficient in the application

6    of his technical expertise to systems analysis.  (Polini Dep. 55:4-16 (testifying that he worked as a

7    "systems analyst" during the relevant time frame).)

8           In sum, Polini met all tests of the computer professional exemption.  As such, Defendants

9    are entitled to summary judgment on all of Plaintiff's PAGA claims on behalf of Polini.

10   **II.    Plaintiff's PAGA Claims Related to Meal Periods Independently Fail.**

11          Polini admits that he was regularly provided meal breaks.  Thus, even if Polini did not

12   qualify for exempt status (although he plainly did), Plaintiff's PAGA claim regarding meal breaks

13   fails as a matter of law.

14          To demonstrate a violation of California's meal break statute, an employee must show that

15   his employer failed to make meal breaks available – i.e., "fail[ed] to relieve [the] employee of

16   duty," and did not relinquish "control over the employee and how he or she spends the time."  *See*

17   *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1038-40 (2012).  Here, however, Polini got a

18   break of at least 30 minutes, free of all duties, each day:

19          Q:    Did anyone ever inform you that you were required to take a
20                meal period?

21          A:    Yes.  Yes.

22          Q:    Who told you that?

23          A.    Oh, they send out the little verbiage, I think, once a year.

24   (Polini Dep. 103:8-13; *see also* Polini Dep. 101:20-102:7.)  Further, Polini took these meal

25   periods.  (Polini Dep. 101:20-102:9, 102:21-103:1; *see also* Polini Dep. 102:2 ("Well, yeah, I

26   took a lunch every day.").)  Indeed, to the extent that Polini ever missed a meal period this was

27   "my choice.  I mean, I just lost track of time."  (Polini Dep. 103:18-22; Polini Dep. 149:18-20

28   (agreeing that if "you wanted to take a break, you could take a break").)  Thus, because IBM

Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini

1   provided Polini with the requisite meal breaks, Plaintiff's PAGA claim on behalf of Polini

2   relating to these breaks should be dismissed with prejudice for this additional reason.

3                                   <u>**CONCLUSION**</u>

4          For the foregoing reasons, Plaintiff's PAGA claims on behalf of Polini fail as a matter of

5   law.  This Court should grant IBM summary judgment and dismiss all of Plaintiff's claims with

6   respect to Polini with prejudice.

7   Dated: March 28, 2013                         JONES DAY

8

9                                          By: /s/ Wendy C. Butler
                                                _____
10                                                  Wendy C. Butler

11                                         Attorneys for Defendant
                                           INTERNATIONAL BUSINESS MACHINES
12                                         CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYI-4509987v4                        - 12 -
Case No. C 10-01070 EJD
Defs.' Notice of Mot. and Mot. for Summ. J.
as to Pl.'s Claims on Behalf of Alan J. Polini