Aaron L. Agenbroad (State Bar No. 242613)
Catherine Nasser (State Bar No. 246191)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94105
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
Email: cnasser@jonesday.com

Matthew W. Lampe (admitted *pro hac vice*)
mwlampe@jonesday.com
Wendy C. Butler (admitted *pro hac vice*)
wbutler@jonesday.com
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MAY MOUA, individually and on behalf of other former and current employees, and for the interest of the general public,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**INTERNATIONAL BUSINESS MACHINES CORPORATION, a California Business Entity, form unknown, JOSEPH KOENIG, an Individual, VENKATASUBRAMANIAM IYER, an Individual, and DOES 1-199,**<br><br>**Defendants.** | Case No.  C 10-01070 EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS IN COUNTS 7-15**<br><br>**DATE: JULY 19, 2013**<br>**TIME: 9:00 AM**<br>**CTRM: 4, 5TH FLOOR**<br>**BEFORE: HON. EDWARD DAVILA** |

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO THE COURT AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2013, at 9:00 a.m., or soon thereafter as the

matter may be heard in Courtroom 4 before the Honorable Edward Davila, United States District

1  Chief Judge, United States District Court for the Northern District of California, San Jose

2  Division, located at 280 South First Street, San Jose California, Defendants International Business

3  Machines Corporation ("IBM"), Joseph Koenig, and Venkatasubramaniam Iyer (collectively,

4  "Defendants"), will and hereby do move the Court as follows:

5       Pursuant to Federal Rule of Civil Procedure 56(a), to dismiss with prejudice:

6       1.    Plaintiff May Moua's ("Plaintiff's") Count Nine for pregnancy discrimination

7  under the California Fair Employment and Housing Act ("FEHA"), on the grounds that Plaintiff

8  cannot establish a prima facie case of discrimination and Plaintiff cannot establish that IBM's

9  legitimate, nondiscriminatory reasons for her termination are a pretext for discrimination;

10       2.    Plaintiff's Count Eight for pregnancy discrimination under the California

11  Constitution, Article I, Section 8, on the grounds that Plaintiff cannot meet her burden to show

12  discriminatory conduct on the part of defendants under FEHA, and her California Constitutional

13  claim therefore likewise fails; and on the grounds that there is no direct private right of action

14  under Article I, Section 8;

15       3.    Plaintiff's Counts Eleven and Thirteen, for interference with leave taken under the

16  Pregnancy Disability Leave Law ("PDLL") and the California Family Right Act ("CFRA"), on

17  the grounds that Plaintiff cannot show that she was entitled to reinstatement to her same or a

18  comparable position, and Plaintiff was not required to perform work during her leave;

19       4.    Plaintiff's Counts Twelve and Fourteen, for retaliation under the PDLL and the

20  CFRA, on the grounds that Plaintiff cannot establish a prima facie case of retaliation and cannot

21  establish that IBM's legitimate, nondiscriminatory reasons for her termination are pretextual;

22       5.    Plaintiff's Count Ten for wrongful termination in violation of public policy, on the

23  grounds that, because her claims under FEHA, the California Constitution, Section 17200 of the

24  California Business and Professions Code, the PDLL, and CFRA fail, her wrongful termination

25  claim likewise fails; and Plaintiff cannot maintain a wrongful termination claim on the other

26  bases alleged in her Complaint as a matter of law;

27       6.    Plaintiff's Count Fifteen, for unfair competition, on the grounds that her unfair

28  competition fails for the same reasons as her claims of discrimination, retaliation, and interference

1   with protected leave; and

2         7.     Certain of Plaintiff's claims for penalties under Count Seven (violation of Private

3   Attorney General Act ("PAGA")), on the grounds that (a) Plaintiff seeks certain statutory

4   penalties that are not available under PAGA; (b) Plaintiff's Second Amended Complaint does not

5   state a claim for penalties under Labor Code § 2699(f); (c) Plaintiff seeks recovery of penalties

6   that are not available for the Labor Code violations she alleges; (d) Plaintiff seek heightened

7   penalties that are not available for initial violations; and (e) Plaintiff cannot recover interest on

8   penalties.

9         This motion is based on this Notice of Motion, the attached Memorandum of Points and

10  Authorities, the declarations of Wendy C. Butler and Josie Holdaway and the exhibits attached

11  thereto, the pleadings and records on file herein, and such further written and oral evidence and

12  argument as may be presented at the time of hearing.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

BACKGROUND ............................................................................................................... 2

     A.     Plaintiff's Employment and Selection for Layoff.................................... 2

     B.     Plaintiff's Lawsuit................................................................................... 6

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.     THE COURT SHOULD DISMISS COUNT NINE (PREGNANCY
     DISCRIMINATION UNDER CALIFORNIA GOV'T CODE)........................ 7

II.    THE COURT SHOULD DISMISS COUNT EIGHT (PREGNANCY
     DISCRIMINATION UNDER CALIFORNIA CONSTITUTION)................... 13

III.   THE COURT SHOULD DISMISS COUNTS ELEVEN AND THIRTEEN
     (INTERFERENCE WITH LEAVE CLAIMS).................................................. 13

     A.     Plaintiff Cannot Show She Was Entitled To Reinstatement To Her Same or
     A Comparable Position ........................................................................ 14

     B.     Plaintiff Was Not Required To Perform Work During Her Leave ...................... 16

IV.   THE COURT SHOULD DISMISS COUNTS TWELVE AND FOURTEEN
     (RETALIATION) ............................................................................................. 16

V.    THE COURT SHOULD DISMISS COUNT TEN (WRONGFUL
     TERMINATION IN VIOLATION OF PUBLIC POLICY)............................... 17

VI.   THE COURT SHOULD DISMISS COUNT FIFTEEN (UNFAIR
     COMPETITION LAW) ................................................................................... 18

VII.  THE COURT SHOULD DISMISS CERTAIN CLAIMS FOR RELIEF IN
     COUNT SEVEN THAT ARE NOT AVAILABLE UNDER PAGA.................. 19

     A.     The Court Should Dismiss Plaintiff's Claim For Statutory Penalties That
     Are Not Available Under PAGA ........................................................... 19

     B.     The Court Should Dismiss Plaintiff's PAGA Claims To The Extent
     Plaintiff Seeks Recovery of Section 2699(f) Penalties ......................... 20

     C.     The Court Should Dismiss Plaintiff's Claims For Heightened Penalties
     That Are Not Available For Initial Violations ...................................... 21

     D.     The Court Should Dismiss Plaintiff's Claim For Interest On Her PAGA
     Penalty Claims ..................................................................................... 22

CONCLUSION ............................................................................................................... 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Addisu v. Fred Meyer, Inc.*,
   198 F.3d 1130 (9th Cir. 2000)..................................................................................... 7

*Alcorn v. Anbro Engineering, Inc.*,
   2 Cal. 3d 493 (1970) ................................................................................................. 18

*Amaral v. Cintas Corp. No. 2*,
   163 Cal. App. 4th 1157 (2008).................................................................................. 22

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*,
   No. 05CV1199, 2009 U.S. Dist. LEXIS 69842, at *9 (S.D. Cal. Aug. 10, 2009)) ............... 22

*American Timber & Trading Co. v. First Nat'l Bank of Oregon*,
   690 F.2d 781 (9th Cir. 1982)..................................................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................. 7

*Badih v. Myers*,
   36 Cal. App. 4th 1289 (1995).................................................................................... 17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................. 7

*Coleman v. The Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000).......................................................................... passim

*Cozza v. Northrop Grumman Corp.*,
   41 F. Supp. 2d 1089 (C.D. Cal. 1999)........................................................................ 8

*Danielson v. Chevron Corp.*,
   1995 U.S. Dist. LEXIS 12074 (N.D. Cal. Aug. 17, 1995).................................... 13

*Drumm v. Morningstar, Inc.*,
   695 F. Supp. 2d 1014 (N.D. Cal. 2010) .................................................................... 22

*Fu v. Walker Parking Consultants*,
   796 F. Supp. 2d 1148 (N.D. Cal. 2011) ......................................................... 7, 8, 17

*Gantt v. Sentry Ins.*,
   1 Cal. 4th 1083 (1992), overruled on other grounds ............................................... 17

*Gilliland v. Safeway, Inc.*,
   2008 U.S. Dist. LEXIS 80354 (E.D. Cal. Oct. 10, 2008) at *18-19 ....................... 17

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Green v. Ralee Eng. Co.*,

4
   19 Cal. 4th 66 (1998) ................................................................................. 17, 18

5

*Guz v. Bechtel National, Inc.*,
   24 Cal. 4th 317 (2000) ...................................................................................... 7

6

*Hanson v. Heckler Mfg. and Investment Group, Inc.*,

7
   1992 U.S. Dist. LEXIS 16861 (N.D. Cal. Oct. 28, 1992) ...................................... 8

8
*Hanson v. Lucky Stores, Inc.*,
   74 Cal. App. 4th 215 (1999) ............................................................................ 17

9

10
*Hardin v. Wal Mart Stores, Inc.*,
   2012 U.S. Dist. LEXIS 28002 (E.D. Cal. March 2, 2012) ................................... 11

11

*Harris v. City of Santa Monica*,

12
   56 Cal. 4th 203 (2013) ................................................................................... 11

13

*Hersant v. Dep't of Soc. Servs.*,

14
   57 Cal. App. 4th 997 (1997) .......................................................................... 8, 9

15
*Himaka v. Buddhist Churches of America*,
   919 F. Supp. 332 (N.D. Cal. 1995) ................................................................. 13

16

17
*Holtzclaw v. Certainteed Corp.*,
   795 F. Supp. 2d 996 (E.D. Cal. 2011) ........................................................ 12, 16

18
*Home Depot USA, Inc. v. Sup. Ct.*,
   191 Cal. App. 4th 210 (2010) ....................................................................... 19

19

20
*Horn v. Cushman & Wakefield Western, Inc.*,
   72 Cal. App. 4th 798 (1999) .......................................................................... 8, 9

21

*Martin v. Lockheed Missiles & Space Co.*,

22
   29 Cal. App. 4th 171 (1994) .......................................................................... 8, 9

23
*McCauley v. Stanford Univ. Med. Center*,
   2009 U.S. Dist. LEXIS 18748 (N.D. Cal. March 11, 2009) ........................... 13, 18

24

25
*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ......................................................................................... 7

26
*Means v. City and County of San Francisco Dept. of Public Health*,

27
   749 F. Supp. 2d 998 (N.D. Cal. 2010) ............................................................. 13

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Merrick v. Farmers Ins. Group,*
4      892 F.2d 1434 (9th Cir. 1990)............................................................ 11

5

*Moua v. Int'l Business Machines Corp.,*
     2013 WL 685220 (N.D. Ca. Feb. 25, 2013)...................................... 6, 14, 15, 16

6

*Nidds v. Schindler Elevator Corp.,*
7      113 F.3d 912 (9th Cir. 1996).............................................................. 10

8

*Reid v. Google, Inc.,*
     50 Cal. 4th 512 (2010) ...................................................................... 11
9

*Reyes v. San Francisco Unified Sch. Dist.,*
10      2012 U.S. Dist. LEXIS 134991 (N.D. Cal. Sept. 20, 2012)................ 11

11

*Rodgers v. United States,*
12      332 U.S. 371 (1947) ......................................................................... 22

13

*Rojo v. Kliger,*
     52 Cal. 3d 65 .................................................................................... 18
14

*Stanley v. Univ. of S. California,*
15      178 F.3d 1069 (9th Cir. 1999).......................................................... 13

16

*Texas Dep't of Community Affairs v. Burdine,*
17      450 U.S. 248 (1981) ........................................................................... 8

18

*Trang v. Turbine Engine Components Technologies Corp.,*
     2012 U.S. Dist. LEXIS 179710 (C.D. Cal. Dec. 19, 2012) ................ 22
19

*Turner v. Anheuser Busch, Inc.,*
20      7 Cal. 4th 1238 (1994) ..................................................................... 18

21

*Villacres v. ABM Industries, Inc.,*
22      189 Cal. App. 4th 562 (2010)....................................................... 19, 20

23

*Wargnier v. National City Mortgage, Inc.,*
     2010 U.S. Dist. LEXIS 62805 (S.D. Cal. 2010) ............................... 13
24

**STATUTES**
25

2 Cal. Code Regs. § 7291.2(j)............................................................ 15
26

2 Cal. Code Regs. § 7291.9(c)(1)....................................................... 14
27

2 Cal. Code Regs. § 7291.9(c)(2)....................................................... 14
28

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3

2 Cal. Code Regs. § 7297.0(g) ............................................................................... 15

4

2 Cal. Code Regs. § 7297.2(c) ............................................................................... 14

5

2 Cal. Code Regs. § 7297.2(c)(1) .......................................................................... 14

6

22 Cal. Code Regs. § 3303.1(c)–1 ........................................................................ 14

7

Cal. Civ. Code § 51 ............................................................................................... 18

8

Cal. Lab. Code § 201 ............................................................................................. 20

9

Cal. Lab. Code § 203 ................................................................................... 19, 20, 22

10

Cal. Lab. Code § 204 ....................................................................................... 20, 21

11

Cal. Lab. Code § 204.3 .......................................................................................... 20

12

Cal. Lab. Code § 210 ....................................................................................... 20, 21

13

Cal. Lab. Code § 226 ....................................................................................... 19, 20

14

Cal. Lab. Code § 226.3 .......................................................................................... 20

15

Cal. Lab. Code § 226.7 .......................................................................................... 20

16

Cal. Lab. Code § 510 ....................................................................................... 20, 21

17

Cal. Lab. Code § 512 ....................................................................................... 20, 21

18

Cal. Lab. Code § 558 ................................................................................... 20, 21, 22

19

Cal. Lab. Code § 1174 ........................................................................................... 20

20

Cal. Lab. Code § 1174.5 ........................................................................................ 20

21

Cal. Lab. Code § 1198 ..................................................................................... 20, 21

22

Cal. Lab. Code § 2699 ................................................................................... 19, 20, 21

23

Cal. Unemp. Ins. Code § 3301(c) .......................................................................... 14

24

California Business & Professions Code § 17200 ........................................ 17, 18, 19

25

California Government Code § 12900. ...................................................................... 6

26
27
28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**OTHER AUTHORITIES**

4

California Constitution, Article 1, § 8 .................................................................................. 6, 13, 17

5

Federal Rule of Civil Procedure 56(a) ....................................................................................... 1, 6

6

Wage Order 4-2001 ............................................................................................................... 20, 21

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

In July 2009, Plaintiff – a member of the "functional team" in IBM's Managed Services

3

Delivery ("MSD") business – was terminated after she was selected for layoff in a reduction in

4

force.  Plaintiff and others in her position were considered for layoff because changes in client

5

demand decreased the need for "functional support" skills.  Plaintiff was selected because she

6

ranked lowest in her particular peer group in an assessment of skills and performance.  Plaintiff

7

now challenges the layoff decision, bringing claims under California laws governing leave,

8

discrimination, and retaliation.  However, Plaintiff cannot create a triable issue of fact as to any of

9

these alleged violations, and thus her claims should be dismissed under Federal Rule of Civil

10

Procedure 56(a).

11

Plaintiff's leave claims are based upon her assertion that she should have been insulated

12

from layoff because she was out on leave.  Plaintiff is wrong.  The governing regulations make

13

clear that employees on leave have no greater rights in layoff situations than those who remain

14

continuously employed.

15

Plaintiff's discrimination and retaliation claims are likewise based on faulty assumptions

16

about the governing legal standards.  Plaintiff's supposed evidence amounts to nothing more than

17

an attempt to second guess the wisdom of IBM's business decisions.  Plaintiff admits that her

18

business unit was moving away from functional support, which is the reason that she, as a

19

member of the functional support team, was vulnerable to layoff.  And Plaintiff's belief that she

20

should have been spared from layoff, and another employee selected instead, is based on nothing

21

more than her own subjective opinion about employee qualifications, which does not entitle her to

22

reach a jury.

23

Plaintiff also asserts claims for civil penalties under PAGA based on alleged violations of

24

Labor Code provisions governing overtime, meal and rest breaks, wage statements, and

25

recordkeeping.  Plaintiff seeks certain penalties and other amounts that are not available under

26

PAGA, and thus her claims for such relief should be dismissed pursuant to Federal Rule of Civil

27

Procedure 56(a).

28

1

## **BACKGROUND**

2

### A.      Plaintiff's Employment and Selection for Layoff

3       Plaintiff became employed by IBM in March 2005, when Corio, her former employer,

4   was acquired by IBM.  (Moua Dep. 54:20-22, 55:6-14.)[1]  After the acquisition, the Corio business

5   (now part of IBM) was referred to as Applications on Demand, and later Managed Services

6   Delivery ("MSD").  (Moua Dep. 25:24-26:7; Iyer Dep. II at 8:2-9:6.)  MSD continued Corio's

7   business of providing technical support for its customers' business applications.  (Moua Dep. at

8   37:2-38:14, 40:2-18; Moua Dep. II 16:14-17).  Plaintiff worked in a business unit within MSD

9   that supports PeopleSoft applications.  (Moua Dep. 37:2-7, 37:22-41:1.)  PeopleSoft is used by

10   large corporations to run enterprise-wide business functions, such as finance or human resources.

11   (Moua Dep. 30:25-31:23.)

12       MSD deploys various teams to provide PeopleSoft support to customers.  (Moua Dep. at

13   27:8-28:25, 44:1-46:9; Iyer Dep. at 84:3-85:5.)  Moua worked on a "functional" (also called

14   "business process") team.  (Moua Dep. at 27:12-28:5; Iyer Dep. at 45:2-4.)  Members of this team

15   had expertise on the various functional modules within the PeopleSoft application, such as human

16   resources or finance.  (Moua Dep. at 31:1-32:1, 34:1-8.)  At the time IBM acquired Corio, this

17   team focused on "functional" support – such as resolving problems with PeopleSoft processes

18   (*e.g.*, financial reports failing to run as a result of a bug in the application) or answering client

19   questions about "how to" use the software.  (Moua Dep. at 127:20-129:7; Moua Dep. II at

20   110:14-22; Iyer Dep. at 42:2-11.)  The team was alerted to client requests for such services

21   through "functional problem tickets."  (Moua Dep. II at 125:19-126:4, 241:4-242:24.)

22       After IBM acquired Corio, it moved to a new support model that involved less functional

23   support and less work on functional problem tickets.  (Moua Dep. at 123:24-124:6) ("Prior to

24   2006, we … had different contracts and different support models, so we did different things");

25   Moua Dep. II at 110:14-22 (after the acquisition, "we got less and less of the how-to questions");

26   ─────────────

[1] Excerpts and exhibits from May Moua's first-phase deposition ("Moua Dep.") and

27   second-phase deposition ("Moua Dep. II") are attached as Exhibits A - C to the Declaration of
Wendy Butler, filed concurrently herewith.  Excerpts and exhibits from Venkat Iyer's first phase

28   deposition ("Iyer Dep.") and second-phase deposition ("Iyer Dep. II") are attached as Exhibits D -
F to the Declaration of Wendy Butler.

1   Moua Dep. II at 268:2-24 (testifying that, in 2009, "I was working less on tickets"); Iyer Dep.

2   40:5-41:24, 72:18-73:8).)  As a result, the functional team had to "reengineer and redesign" itself

3   by acquiring new skills and expertise.  (Iyer Dep. 40:5-41:24, 72:18-73:8.)  Members of this team

4   began performing as service delivery managers ("SDM").  (*Id.*)  As SDMs, they focused more on

5   leading and coordinating work on projects and managing customers.  (Moua Dep. II at 288:20-

6   289:9 (testifying she spent less time on tickets and began spending time on service delivery

7   manager role); Iyer Dep. 74:21-75:16; Iyer Dep. II. 9:11-21 ("In 2008, … [u]nderstanding that the

8   changing environment needed us to take on more and put on a different hat, we were trying to

9   transition into the service delivery manager roles"); Iyer Dep. at 134:2-14 (testifying that the

10  skills of a service delivery go beyond the product and include "ability to manage customers … be

11  accountable for delivery … team management … project manage[ment]").)

12          Although the service delivery manager role had not been fully rolled out at the time

13  Plaintiff's employment terminated, she was aware of the vision for the role and had noticed a shift

14  in her responsibilities.  (Moua Dep. 123:24-124:6; Moua Dep. II at 138:9-139:16.)  By 2009,

15  Plaintiff was spending less time on functional tickets and more time planning software

16  maintenance activities, which she had not previously performed.  (Moua Dep. 114:17-115:12;

17  Moua Dep. II at 268:2-24 (testifying that, in 2009, "I was working less on tickets"), 288:20-

18  289:24 (testifying that maintenance planning and change management took up more of her time).)

19  Plaintiff's supervisor told her she would need to grow into the new service delivery manager role,

20  which would require her to act in a more advisory role with her customers.  (Moua Dep. 77:13-

21  79:12) (agreeing that management wanted her team to perform an advisory role, but testifying

22  that she was not yet performing as an advisor to the customer); Moua Dep. II at 138:9-139:16)

23  (testifying that the new role would require her to become "more involved with customers during

24  their decisions"); 288:20-289:9).

25          In the first quarter of 2009, IBM went through layoffs (sometimes called "Resource

26  Actions") in many of its business units, including MSD.  (Iyer Dep. 62:4-64:24; Iyer Dep. (II)

27  23:21-24:6.)  Sanje Kak, a second-line manager in MSD, was given a target number of employees

28  who would need to be laid off.  (Iyer Dep. at 65:6-10; Iyer Dep. II 13:23-15:6.)  To meet this

1   target, Kak and his team of first-line managers, including Plaintiff's supervisor, Venkat Iyer,

2   identified job groups involving skills that would not be in high demand going forward.  (Iyer Dep.

3   at 65:6-66:13; Iyer Dep. II 16:6-18:9, 47:1-16.)  One such job group consisted of three employees

4   on the functional/business process team.  (Iyer Dep. at 76:14-77:11, 83:23-86:16.)[2]  Because of

5   the decreased demand for the functional support skills performed by these employees, IBM

6   decided to lay off one of these employees.  (*Id.* at 40:5-12, 40:21:41:6, 71:22-73:8; Iyer Dep. II at

7   37:16-38:24, 45:14-21.)  As part of the selection process, Iyer, with support from Kak and a

8   Human Resources Professional, conducted an assessment that measured the skills and

9   performance of the three employees.  (Iyer Dep. at 74:11-77:11; Iyer Dep. II at 74:18-76:21, Ex. 2,

10  78:16-25.)  Plaintiff ranked lowest in this assessment, and as a result, she was selected for layoff.[3]

11  (*Id.* at 73:22-74:3; Iyer Dep. II at 74:18-82:25, Ex. 2.)

12      Plaintiff was on disability leave at the time the Resource Action was announced.  Her

13  leave commenced on March 13, 2009, at which time she was placed on bed rest due to preterm

14  labor.  (Moua Dep. II at 43:21:45:5, 47:9-14, 48:1-5, Ex. 22.)  Her doctor provided a return to

15  work date of June 30, 2009 (*id.* at 48:6-49:3, Ex. 23), but Plaintiff requested an additional six

16  weeks of leave (under the California Family Rights Act ("CFRA")), which provides additional

17  leave for bonding with a child after the expiration of disability-related pregnancy leave.  (*Id.* at

18

19      [2] Two other functional team members were responsible for projects that spanned multiple
20  business lines within MSD and thus were not included in the job group, because their work on
    these projects was critical to MSD and IBM could not afford to lose their services.  (Iyer Dep.
21  85:6-85:16.)

22      [3] As the assessments reflect, the candidates were rated as "High" ("H"), "Medium" ("M")
    or "Low" ("L") on 4 different skills.  (Iyer Dep. II at 74:18-82:25, Ex. 2.)  In the skill ranking,
23  Plaintiff received the lowest overall ranking and had the lowest score in the skill that was ranked
    most important, namely "Lead and coordinate to ensure smooth execution of operational
24  processes including Change management, and SOP."  (*Id.*)  The assessments also factor in each
    candidate's PBC scores for the past three years.  PBCs are IBM's annual performance appraisal
25  system; each PBC contains a numerical assessment which ranges from "1," the highest score, to
    "4" which is an "unsatisfactory" score.  (*Id.*)  A "2" signals that the employee is a "Solid
26  Contributor" who consistently meets job responsibilities, while a "2+" signals that the employee
    is an "Above Average Contributor" who goes above and beyond job responsibilities.  (*Id.*)  While
27  one of the three employees, Aquino, had received "2+" on two out of three PBCs (and a "2" on
    the other), and a second of the three, Kancherla, had received "2+" on all three of her last three
28  PBCs, Plaintiff had received "2"s on all but one PBC (where she received a "2+").  Thus, Plaintiff
    also ranked lowest in her PBC scores.  (*Id.*)

1   43:2-8, 45:16-47:2, Ex. 21.)  This request was granted, and her return to work date was scheduled

2   for August 10, 2009.  (*Id.* at 46-47, Ex. 21.)

3          Iyer notified Plaintiff of her selection for layoff on June 15, 2009, approximately two

4   weeks before her disability leave expired.  (Moua Dep. II at 21:17-22:11.)  At that time, Iyer told

5   Plaintiff that starting June 30, 2009 (which was the day after her disability leave was scheduled to

6   end), she would be provided full pay for a 30-day period, during which time she could look for

7   another position within IBM if she chose to do so.  (*Id.* at 53:17-54:1, 56:23-57:6.)  This paid 30-

8   day job search allowance is offered to all employees selected for layoff.  (*Id.* at 54:16-21.)

9   During this period, Plaintiff could (if she chose) access IBM's job search database through her

10  home computer.  (*Id.* at 106:4-9.)  Iyer told Plaintiff that she would not be required to perform

11  any work during this optional job-search period.  (*Id.* at 64:13-65:5; Iyer Dep. 98:20-21, 241:22-

12  25.)

13         Plaintiff chose to take advantage of this job-search period and, on or about July 24, 2009,

14  she applied for a position that was advertised on IBM's internal job database.  The position was

15  posted by Josie Holdaway, a manager in IBM's Managed Business Process Services ("MBPS")

16  unit, a business that focused on application development and customization.  (Moua Dep. II at

17  72:9-73:23, Ex. 24; Declaration Josie Holdaway Support Defs.' Opp'n Pl.'s Mot. Summ. J.

18  ("Holdaway Decl.") at ¶ 2.)  Holdaway was looking for a Test Specialist to support User

19  Acceptance Testing for a new costing/pricing application that IBM was developing.  (*Id.* at ¶¶ 2-3,

20  Ex. A.)  According to the job posting, the Test Specialist would be responsible for "writing and

21  executing a set of User Scenarios that would serve as a starter set of UAT test cases" and

22  providing guidance on User Acceptance Testing.  (*Id.*)  Holdaway did not have authority to hire

23  or transfer anyone into her department to perform this work.  (*Id.* at ¶ 5.)  Instead, the posting was

24  used to find an existing IBM employee who could be temporarily loaned out, without increasing

25  employee headcount in Holdaway's department, to perform work on the project.  (*Id.*)  Holdaway

26  was unable to consider candidates who, like Plaintiff, had been selected for layoff.  (*Id.* at ¶6.)

27  Ultimately, Holdaway filled the opening with an employee who worked in her organization but

28

1   reported into a different department managed by Paule Balfe.  (*Id*. at ¶8).[4]  While performing the

2   Test Specialist role for Holdaway, this employee continued to be assigned to Balfe's department.

3   (*Id*.)

4       **B.    Plaintiff's Lawsuit**

5       Plaintiff filed this action on January 11, 2010, and Defendants removed the case to this

6   Court on March 12, 2010.  In the operative Second Amended Complaint ("SAC"), Plaintiff

7   asserts, *inter alia*, that IBM discriminated against her based on pregnancy in violation of the

8   California Constitution, Article 1, § 8 (Eight Cause of Action) and the California Government

9   Code §§ 12900 *et seq*. (Ninth Cause of Action); that IBM interfered with her leave rights in

10  violation of the CFRA (Eleventh Cause of Action) and the Pregnancy Disability Leave Law

11  ("PDLL") (Thirteenth Cause of Action); that IBM retaliated against her for taking leave in

12  violation of the CFRA (Twelfth Cause of Action) and the PDLL (Fourteenth Cause of Action);

13  and that the foregoing constituted wrongful termination in violation of public policy (Tenth Cause

14  of Action) and violated the Unfair Competition Law (Fifteenth Cause of Action).  (Second Am.

15  Compl., Dkt. 66, Feb. 1, 2012.)   Plaintiff also asserts claims for civil penalties under the Labor

16  Code Private Attorney General Act ("PAGA") (Seventh Cause of Action).

17      On September 12, 2012, prior to the close of discovery, Plaintiff filed a motion seeking

18  partial summary judgment on her interference claims – *i.e.*, the Eleventh and Thirteenth Causes of

19  Action.  (Dkt. 79.)  In a February 1, 2013 Order, this Court denied Plaintiff's motion.  *See Moua v.*

20  *Int'l Bus. Machs. Corp*., No. 5:10-CV-01070 – EJI, 2013 WL 685220 (N.D. Ca. Feb. 25, 2013).

21  The Court found that Plaintiff's evidence did not support either her contention that she was

22  required to work during her leave or her claim that she was wrongfully denied reinstatement at

23  the conclusion of her leave.  *Id.* at *4-5.

24                      **LEGAL STANDARD**

25      Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when

26  there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

27

28      [4] Holdaway had already extended an offer to the candidate at the time Plaintiff expressed
    interest in the position.  (Holdaway Decl. ¶8.)

1  matter of law.  *See* Fed. R. Civ. P. 56(a).  Where the moving party has met its initial burden of

2  showing that there is an absence of evidence to support the nonmoving party's case, the

3  nonmoving party may escape summary judgment only by demonstrating the existence of some

4  factual issue requiring trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Anderson*

5  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A scintilla of evidence or evidence that is

6  merely colorable or not significantly probative" fails to satisfy the nonmoving party's burden.

7  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Rather, summary judgment is

8  precluded only if the nonmoving party demonstrates the existence of genuine disputes involving

9  evidence that would allow a reasonable jury to render a verdict for that party on an issue affecting

10  the outcome of the suit.  *See Anderson*, 477 U.S. at 248, 249.

11  <u>**ARGUMENT**</u>

12  **I.    THE COURT SHOULD DISMISS COUNT NINE (PREGNANCY**
    **DISCRIMINATION UNDER CALIFORNIA GOV'T CODE).**

13
        Plaintiff's claim for pregnancy discrimination under the California Fair Employment and

14  Housing Act ("FEHA") fails under the burden shifting framework established by the U.S.

15  Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973).  *Guz v.*

16  *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (holding that *McDonnell Douglas* governs FEHA

17  claims).  Under this framework, an employee must first establish a prima facie case of

18  discrimination, which requires that she prove that (1) she was a member of a protected class; (2)

19  she was performing competently in the position she held; (3) she suffered an adverse employment

20  action; and (4) some other circumstance suggests discriminatory motive.  *See Fu v. Walker*

21  *Parking Consultants*, 796 F. Supp. 2d 1148, 1155 (N.D. Cal. 2011).

22
        If the employee can establish her prima facie case, the burden shifts to the employer to

23  articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell*

24  *Douglas*, 411 U.S. at 802; *Guz*, 24 Cal. 4th at 355-56.  An employer need only show that the

25  reasons for the adverse employment action are facially unrelated to the prohibited bias and, if

26  true, would preclude a finding of discrimination.  *Guz*, 24 Cal. 4th at 358.  Once an employer

27  produces such evidence, a plaintiff can survive summary judgment only by providing significant,

28

substantial evidence that the employer's stated reason for the challenged action is pretextual and that the real reason is discrimination. *Fu*, 796 F. Supp. 2d at 1155. "The ultimate burden of persuading [the] trier of fact that [the] defendant intentionally discriminated against [the] plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, even if Plaintiff could establish her prima facie case, which she cannot,[5] she cannot establish a triable issue as to whether IBM's legitimate, nondiscriminatory reasons for her termination are a pretext for discrimination. IBM's need to reduce its work force in response to economic factors (Iyer Dep. at 71:21-72:9) and its decision to select Plaintiff for layoff based on an undeniably well-defined selection process (*see* discussion *supra* at 3-4) constitute legitimate, non-discriminatory reasons. *See Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1731-32 (1994) (employer met its burden of articulating a legitimate, nondiscriminatory reason where it selected the plaintiff for layoff based on a well-defined process that compared past performance ratings and factored in seniority); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000); *Hanson v. Heckler Mfg. and Investment Group, Inc.*, No. C-91-2809, 1992 U.S. Dist. LEXIS 16861, at *8-9 (N.D. Cal. Oct. 28, 1992).

To prove pretext, then, Plaintiff must offer specific and significantly probative evidence that IBM's articulated reason is "untrue or pretextual, [or] evidence the employer acted with a discriminatory animus, or a combination of the two . . . ." *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1004-1005 (1997); *see also Cozza v. Northrop Grumman Corp.*, 41 F. Supp. 2d 1089, 1094 (C.D. Cal. 1999) ("To counter defendant's proposed nondiscriminatory reasons, the plaintiff must produce 'specific, substantial evidence of pretext.'").) Plaintiff must do far more than show that IBM's decision was "wrong, mistaken, or unwise." *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 807 (1999). She must demonstrate that IBM's

---

[5] Plaintiff cannot meet her burden of establishing a prima facie because she lacks evidence giving rise to an inference of discrimination. *See Fu*, 796 F. Supp. 2d at 1155; *Coleman*, 232 F.3d at 1281 (to establish fourth element of prima facie case, plaintiff must show "evidence that the discharge occurred under circumstances giving rise to an inference of [ ] discrimination") (internal quotations omitted). Plaintiff's evidence fails to establish an inference of discrimination for the same reason that she is unable to rebut IBM's legitimate business reasons for her termination.

1    reason is "unworthy of credence." *Hersant*, 57 Cal. App. 4th at 1005.  Plaintiff's "speculation

2    cannot be regarded as substantial responsive evidence[.]" *Martin*, 29 Cal. App. 4th at 1735.

3           Plaintiff has no "specific, substantial evidence of pretext."  Instead, she attempts to second

4    guess IBM's business decisions as "wrong, mistaken, or unwise."  Specifically, Plaintiff

5    questions the termination decision simply because she believes that the PeopleSoft team was

6    "busy" and could not afford to lose an employee.  (Moua Dep. II at 88:18-89:6, 107:21-108:24.)

7    However, Plaintiff cannot dispute that her supervisor was instructed to reduce the size of his team

8    to meet economic targets.  (Moua Dep. II at 89:10-21; Iyer Dep. II at 45:14-19.)  And she

9    acknowledges the decreased need for functional support, *see* discussion *infra* at 2-3, which drove

10   the decision to reduce headcount on the functional team.  Especially given these admissions, as

11   well as her confessed lack of knowledge of the relative work load of her team as compared with

12   other teams (Moua Dep. II at 107:21-108:24), Plaintiff's attempt to question the wisdom of

13   IBM's rationale for downsizing her team does not constitute evidence of discrimination.  *See*

14   *Martin*, 29 Cal. App. 4th at 1735 (plaintiff's "showing in the trial court was insufficient to create

15   more than speculation that [defendant's] showing was pretextual or false.").

16          Plaintiff fares no better by questioning IBM's selection of her rather than her co-worker

17   Aris Aquino.  (Moua Dep. II at 124:7-12, 157:17-158:1)  Plaintiff believes that Aquino was a

18   weaker performer because:  (1) she believes he closed fewer functional problem tickets and

19   would sometimes defer work on low-priority tickets (*id*. at 125:7-8, 125:24-126:4, 137:5-23), and

20   (2) she believes she had broader knowledge of PeopleSoft modules than Aquino (*id*. at 125:2-4).

21   But Plaintiff's personal opinions about employee qualifications cannot sustain inferences of

22   pretext.  *Horn*, 72 Cal. App. 4th at 816; *see also Coleman*, 232 F.3d at 1286 (plaintiff's

23   "subjective evaluation of his qualifications cannot raise an issue of material fact").  Moreover,

24   Plaintiff's supervisor testified that his layoff decisions focused less on past performance, and

25   more on the skills required to meet the changing needs of the business.  (Iyer Dep. at 67:2-16,

26   73:15-20.)  He described significant changes that radically altered the responsibilities of the

27   functional team, noting that, today, the functional support team "wouldn't be doing five percent

28   of what we did in 2005" (at the time Corio was acquired).  (Iyer Dep. at 72:24-25.)  Plaintiff

1   concedes that she does not know what skills were considered important to the future of MSD, and

2   that she does not know what skills were used as part of the selection process.  (Moua Dep. II at

3   137:24-138:8, 174:24-175:2.)  Plaintiff, therefore, can provide no competent testimony about

4   IBM's selection criteria or rationale and thus cannot even begin to establish pretext.  *See, e.g.*,

5   *Coleman*, 232 F.3d at 1285 ("[t]he question is not whether [plaintiff] in the abstract had better

6   qualifications than the other candidates.  The question is whether the other candidates are more

7   qualified with respect to the criteria that [the employer] actually employs.") (internal quotations

8   omitted).

9         Plaintiff also claims that Iyer's alleged shifting explanations for the layoff support her

10   discrimination claims.  (Moua Dep. II at 87:22-88:18.)  However, her testimony shows that Iyer

11   did not change his original explanation, but rather responded to Plaintiff's request for additional

12   details.  *See Coleman*, 232 F.3d at 1286-87 ("As the later reasons mainly detail the earlier one,

13   they are not properly described as shifting reasons.") (interal quotations omitted) (citing with

14   approval *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996)).  Plaintiff alleges

15   that Iyer initially told her in June 2009 that performance was not a factor, but, seven to ten days

16   later, he explained that her skills rating was the main factor, but her performance ratings during

17   the past three years were also considered.  (Moua Dep. (II) at 22:5-17, 27:10-25, 29:24-32:6;

18   87:22-88:13, 117:5-11.)  Plaintiff admits that she and Iyer did not fully discuss the reasons for the

19   layoff during the first conversation because Iyer was not sure how much he could disclose

20   without consulting with Human Resources ("HR").  (Moua Dep. at 29:7-19.)  During the second

21   conversation, after consulting with HR, Iyer told her that her layoff was based on performance

22   and relevant skills, and clarified that the performance ("PBC") ratings for the past three years

23   were reviewed, but not heavily weighted.  (*Id.* at 30:21-32:6.)  Moreover, this is not a case where

24   the employer's reasons for termination were not provided until after litigation is commenced.  *See*

25   *cf. Coleman*, 232 F.3d at 1286 ("doubt is cast on an employer's proffered reasons for why an

26   employee was laid off where a straightforward answer was not given when he or she was

27   terminated, but later is provided during litigation").  To the contrary, Plaintiff was advised of the

28

1    reasons for her termination prior to litigation and prior to her effective termination date with IBM.

2    (Moua Dep. II. at 26:16-32:5.)

3         Finally, none of the comments Plaintiff attributes to Iyer creates a jury question of pretext.

4    Plaintiff contends that:  (1) upon learning of her pregnancy in November 2008, Iyer allegedly

5    commented about his own struggles as a father in achieving work-life balance and asked if

6    Plaintiff "was going to have any more kids"  (Moua Dep. 85:13-86:14); (2) Iyer asked Plaintiff

7    about Plaintiff's maternity leave plans in February (*id.* at 87:2-12); and (3) Iyer asked if Plaintiff

8    could drive two-and-a-half hours to a conference in light of her pregnancy (*id.* at 168:23-169:21).

9         So-called "stray" remarks, such as these, that are not connected to the decisional process

10   cannot, standing alone, create a triable issue of discrimination.  *See, e.g.*, *Hardin v. Wal Mart*

11   *Stores, Inc.*, No. CIV-F-08-0617, 2012 U.S. Dist. LEXIS 28002 at *61 (E.D. Cal. Mar. 2, 2012)

12   (granting summary judgment in favor of employer and noting that "'remarks . . . when unrelated

13   to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate

14   criteria, even when such statements are made by the decision-maker in issue'"); *Reyes v. San*

15   *Francisco Unified Sch. Dist.*, No. 11-CV-04628, 2012 U.S. Dist. LEXIS 134991 at *22-23 (N.D.

16   Cal. Sept. 20, 2012) (plaintiff failed to establish her prima facie case with only the stray comment

17   underlying her discrimination claim); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-39

18   (9th Cir. 1990) (stray remarks unrelated to the challenged adverse actions are insufficient to

19   establish discrimination); *Reid v. Google, Inc.*, 50 Cal. 4th 512, 541-542 (2010) (a "stray remark

20   alone may not create a triable issue of age discrimination").

21        As recently recognized by the California Supreme Court in *Harris v. City of Santa*

22   *Monica*, 56 Cal. 4th 203, 231 (2013), California's statute governing discrimination ("FEHA"):

23           does not purport to outlaw discriminatory thoughts, beliefs, or stray
             remarks that are unconnected to employment decisionmaking
24           ….such comments alone do not support a claim under [FEHA].
             FEHA does not prohibit discrimination 'in the air.' It prohibits
25           discrimination that causes an employer 'to . . . discriminate against
             the person in compensation or in terms, conditions, or privileges of
26           employment.'

27

28

1    *Id.* at 231.  In *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1013-14 (E.D. Cal. 2011), the

2    district court held that a plaintiff in an age discrimination case failed to meet his burden of

3    showing pretext, where the plaintiff presented evidence of three stray comments regarding his age

4    made by his supervisor and a human resources manager.  Specifically, the plaintiff alleged that

5    (1) the HR manager told plaintiff he "should 'think about retiring' and that he 'could [retire and]

6    take his wife out'"; (2) plaintiff's supervisor told him "'he must be getting up there old enough

7    that [plaintiff] was thinking of retirement'"; and (3) the HR manager told plaintiff "that he had

8    turned fifty-five while on medical leave and that he was 'old enough to retire.'"  *Id.* at 1014.  The

9    court granted summary judgment for the employer, finding that "the comments were unrelated to

10    the decisional process and thus insufficient."  *Id.*

11        Here, the alleged comments by Iyer are unrelated to Plaintiff's selection for layoff and

12    thus likewise legally insufficient.  Iyer's alleged comments in the November conversation, as

13    described by Plaintiff, were entirely unrelated to his views of Plaintiff's performance and

14    certainly were not connected to the layoff decision which occurred later in time.  (Moua Dep. II at

15    85:13-86:14.)  Rather, Iyer allegedly discussed his own work-life balance struggles, without in

16    any way suggesting that Plaintiff's pregnancy or family commitments affected her performance

17    or made her vulnerable to layoff.  (*Id.*)

18        The other alleged comments are also unremarkable and unrelated to the layoff decision.

19    Iyer questioned Plaintiff about her leave plans in February 2009 because she was scheduled to go

20    on leave in March 2009, and Iyer's practice is to have a two week period to transition duties in

21    such situations.  (Moua Dep. II at 43:21-44:15; Iyer Dep. II at 29:14-30:22.)  Iyer's concerns with

22    an orderly transition of responsibilities does not in any way support an inference that his decision

23    to select Plaintiff for layoff was discriminatory.  *Holtzclaw*, 795 F. Supp. 2d at 1013-14 (alleged

24    comments about age in connection with discussions about retirement eligibility did not support

25    conclusion that layoff decision was based on age).  Nor does Iyer's alleged inquiry into whether

26    Plaintiff could make a 2-and-a-half hour drive to a conference create an inference of

27    discrimination.  Plaintiff cannot connect this alleged comment to the decision to select her for

28    layoff.  *Id.*  (comments unrelated to the decisional process are insufficient to create a triable issue

1   of discrimination).  Plaintiff cannot even connect the comment to a job requirement – she admits

2   that it was an optional conference that not everyone on the team was required to attend.  (Moua

3   Dep. II at 168:23-169:14.)

4   **II.     THE COURT SHOULD DISMISS COUNT EIGHT (PREGNANCY DISCRIMINATION UNDER CALIFORNIA CONSTITUTION).**

5

6           Because Plaintiff's statutory discrimination claims fail as explained above, her claim for

7   pregnancy discrimination under Article I, Section 8 of the California Constitution fails as well.

8   *See Means v. City and Cnty. of San Francisco Dep't of Public Health*, 749 F. Supp. 2d 998, 1008-

9   1009 (N.D. Cal. 2010) (claim under California Constitution Article I, Section 8 fails where

10  plaintiff cannot meet burden under Title VII or FEHA); *see also Stanley v. Univ. of S. Cal.*, 178

11  F.3d 1069, 1077 (9th Cir. 1999) (holding that plaintiff's claims for discrimination under FEHA,

12  Title IX of the Civil Rights Act of 1972, and Article I, § 8 of the California Constitution all failed

13  because plaintiff failed to show any discriminatory conduct on the part of defendants); *McCauley*

14  *v. Stanford Univ. Med. Ctr.*, No. C 07-1784, 2009 U.S. Dist. LEXIS 18748 at *35-36 (N.D. Cal.

15  Mar. 11, 2009) (holding that plaintiff's failure to make out a case of discrimination, hostile work

16  environment, or retaliation disposed of her claim for violation of Article I, Section 8 of the

17  California constitution).[6]

18  **III.    THE COURT SHOULD DISMISS COUNTS ELEVEN AND THIRTEEN (INTERFERENCE WITH LEAVE CLAIMS).**

19          Plaintiff alleges in her Eleventh and Thirteenth causes of action that Defendants interfered

20  with her leaves under the PDLL and CFRA by (1) failing to reinstate her to the same or a

21  comparable position, and (2) requiring her to work during her leave.[7]  In denying Plaintiff's

22          [6] Some courts hold that there is no direct private right of action for damages available
23  under Article I, Section 8, and for this additional reason Plaintiff's constitutional claim should be
    dismissed.  *See Wargnier v. Nat'l City Mortg., Inc.*, No. 09CV2721, 2010 U.S. Dist. LEXIS
24  62805 at *5 (S.D. Cal. 2010) (granting motion to dismiss claim of pregnancy discrimination
    under the California Constitution on the ground that there is no private right of action) (*citing
25  Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300 (2002)); *see also Himaka v. Buddhist
    Churches of Am.*, 919 F. Supp. 332, 334-335 (N.D. Cal. 1995); *Danielson v. Chevron Corp.*, No.
26  C-92-3035, 1995 U.S. Dist. LEXIS 12074 at *15-19 (N.D. Cal. Aug. 17, 1995).

27          [7] In the SAC, Plaintiff alleges she was "denied the opportunity to take … her *paid
    bonding leave* when the company required her to return to work early."  (SAC, Dkt 66, ¶ 20)
28  (emphasis added).  The SAC does not associate this reference to "paid bonding leave" to any
    statutory rights or obligations, nor does it connect this allegation to any specific cause of action.
    In the event Plaintiff argues that the SAC states a claim for payments under the California Paid

1   motion for summary judgment on her interference claims on February 15, 2013, this Court held

2   that Plaintiff's evidence did not support either her contention that she was required to work during

3   her leave or her claim that she was wrongfully denied reinstatement at the conclusion of her leave.

4   *See Moua*, 2013 WL 685220 at *4-5.  Subsequent discovery – including Plaintiff's own

5   admissions – confirmed that there is no triable issue of fact as to any of Plaintiff's interference

6   claims.

       A.    **Plaintiff Cannot Show She Was Entitled To Reinstatement To Her Same or a
7            Comparable Position.**

8          Both the PDLL and CFRA provide that employees on leave have no greater rights than

9   employees not on leave.  *See* 2 Cal. Code Regs. § 7297.2(c)(1) (providing that an employee has

10  "no greater right to reinstatement … than if the employee had been continuously employed during

11  the CFRA leave period"); 2 Cal. Code Regs. § 7291.9(c)(1) (providing that employees on PDLL

12  leave have no greater rights than others not on leave); 2 Cal. Code Regs. § 7291.9(c)(2) (same).

13  Accordingly, as this Court has already held in this action, "the guarantee of reinstatement to the

14  same or comparable position *does not preclude an employer from terminating the employee's*

15  *employment as part of a work force reduction*."  *Moua*, 2013 WL 685220 at *5 (emphasis in

16  original) (*citing Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th 934, 939-40, 118 Cal. Rptr. 2d

17  822 (2002)).  Where an employee is selected for layoff due to legitimate business reasons

18  unrelated to the employee's leave, the employee has no claim under the leave statutes.  2 Cal.

19  Code Regs. § 7297.2(c); *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 519 (2006).

20         Here, Plaintiff's claim for reinstatement under the leave laws fails because she was

21  selected for layoff for a legitimate business reason that was unrelated to her leave.  *See* discussion

22  *supra* Section I.   The fact that she was on leave did not immunize her from being selected for

23  layoff based on these factors.  *See, e.g.*, *Moua*, 2013 WL 685220 at *5.

24

25  _____

    (continued…)

26  Family Leave Act ("PFL") (and it does not), she cannot create a triable issue with respect to this
    claim.  The PFL creates rights to receive payments but does not create any right to protected leave.
27  Cal. Unemp. Ins. Code § 3301(c); 22 Cal. Code Regs. § 3303.1(c)–1.  Because Plaintiff concedes
    that she received all payments to which she was entitled in connection with her leaves (Moua Dep.
28  II at 234:4-234:25), she cannot state a claim for relief under the PFL.

Nor can Plaintiff show that she was entitled to reinstatement to a comparable position. The governing regulations adopt a narrow definition of "comparable," providing that a position is comparable if it is "virtually identical to the employee's original position …. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, [and] responsibility . . . ." *See* 2 Cal. Code Regs. § 7297.0(g); 2 Cal. Code Regs. § 7291.2(j).  Plaintiff identifies only one position which she contends was comparable – the Test Specialist position (*see supra* at 4**)** – but, as this Court already found, "none of the evidence [relied upon by Plaintiff] establishes that … the open position was comparable to Plaintiff's position." *See Moua*, 2013 WL 685220 at *4.  Specifically, the hiring manager testified that this position focused exclusively on User Acceptance testing and related training in connection with a project to develop a new computer application.  (Holdaway Decl. ¶ 4.)  The position was responsible for "supporting User Acceptance Testing" by "writing and executing a set of User Scenarios," writing unique test scripts tailored to the customer's business requirements, and assisting the testers to complete the User Acceptance Testing.  (*Id*. at ¶ 2,4, Ex. A; Moua Dep. II at 72:9-17, Ex. 24.)  In her deposition after the Court's ruling denying her motion for summary judgment, Plaintiff admitted that she did not perform User Acceptance Testing during her employment with IBM (Moua Dep. II at 74:3 - 76:19), that her involvement with testing was limited to unit testing for patches (*id*.), and that she spent only 10% of her time on testing (*id*. at 78:16-25).  She did not write unique test scripts and did not write test steps.  (*Id*. at 77:7-9, 80:21-82:6.)  Plaintiff thus cannot establish that her position was "virtually identical to" and "involve[d] the same or substantially similar duties and responsibilities, … skill, effort, [and] responsibility" as the Test Specialist position.  *See* 2 Cal. Code Regs. § 7297.0(g); 2 Cal. Code Regs. § 7291.2(j).

Even if Plaintiff could show the Test Specialist position were comparable, she still could not prevail because she cannot show that she was qualified for the position.  *See* § 7291.9(c)(2) (A comparable position is available if there is a position open… for which the employee is "qualified").  The hiring manager for the Test Specialist position did not have approval to hire or transfer an employee into her department (because she could not increase the headcount in her department).  (Holdaway Decl. ¶5.)  Rather, the employee selected for the Test Specialist

1   assignment had to remain in his/her department while temporarily performing the Test Specialist

2   responsibilities.  (*Id.*)  Because the hiring manager could not increase headcount in her

3   department, she was not allowed to choose for the position an employee who, like Plaintiff, had

4   been selected for layoff.  (*Id.* at ¶6.)  *See, e.g.*, *Moua*, 2013 WL 685220 at *5 (finding that

5   plaintiff could not show that she was eligible for the position because the Test Specialist position

6   was not one into which employees could transfer).

7     **B.  Plaintiff Was Not Required To Perform Work During Her Leave.**

8     Plaintiff bases her contention that she was required to work during her leave on nothing

9   more than the fact that IBM gave her a 30-day period to conduct a job search after her selection

10   for layoff.  But as this Court noted in denying Plaintiff's motion for summary judgment, Plaintiff

11   was not required to continue her regular job duties during this job search period.  *See Moua*, 2013

12   WL 685220 at *4.  And, when Plaintiff was deposed (after the Court's decision denying her

13   motion for summary judgment), Plaintiff admitted that she was not required to, and in fact did

14   not, perform any responsibilities during this period.  (Moua Dep. II at 64:2-65:23.)  She further

15   admitted that the job search was voluntary.  (Moua Dep. II at 57:3-12.)  Thus, Plaintiff's claim

16   that IBM interfered with her leave by requiring her to perform work during her leave likewise

17   fails.

18   **IV.  THE COURT SHOULD DISMISS COUNTS TWELVE AND FOURTEEN**
19   **(RETALIATION).**

20     Plaintiff's retaliation claims under CFRA and the PDLL are governed by the *McDonnell*

21   *Douglas* burden shifting framework.  *See Holtzclaw*, 795 F. Supp. 2d at 1019-21.  To establish a

     prima facie case of retaliation under the *McDonnell Douglas* framework, Plaintiff must have

22   evidence of a "causal link" between her leave and the termination decision.  *Id.*  Even if she had

23   such evidence (and she does not), she would have to then prove that IBM's legitimate,

24   nondiscriminatory reasons for selecting her for layoff were a pretext for discrimination.  *Id.*

25   Plaintiff cannot create a triable issue regarding pretext, *see* discussion *supra* at Section I, and

26   therefore her retaliation claims fail.

27

28

V.     **THE COURT SHOULD DISMISS COUNT TEN (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY).**

Plaintiff's claim that she was wrongfully terminated in violation of public policy (a so-called *Tameny* claim) is based on alleged violation of public policies expressed in the following statutory, constitutional, and case law provisions:  (1) Article I, Section 8 of the California Constitution; (2) the opinion in *Badih v. Myers*, 36 Cal. App. 4th 1289, 1293-1294 (1995); (3) Unruh Civil Rights Act; (4) California Business & Professions Code § 17200 ("Section 17200"); (5) FEHA; (6) California PDL Act; (7) CFRA, and (8) "all other state and federal statutes, regulations, administrative orders and ordinances that affect society at large."  SAC ¶ 93.  IBM is entitled to summary judgment on this claim as well.

First, because Plaintiff's claims under FEHA, the California Constitution, Section 17200, the PDL Act, and CFRA fail for the reasons explained above, her wrongful termination claim based on the alleged violation of the public policy expressed in those statutes necessarily fail as well.  *See, e.g., Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 229 (1999); *Fu*, 796 F. Supp. 2d at 1157 n.29 (holding that, because plaintiff's discrimination claim fails, her claim for wrongful termination in violation of public policy also fails); *Gilliland v. Safeway, Inc*., No. 2:08-CV-01134, 2008 U.S. Dist. LEXIS 80354 at *18-19 (E.D. Cal. Oct. 10, 2008) (holding that plaintiff's *Tameny* claim based on the public policy against unfair competition in Section 17200 must be dismissed because Plaintiff's underlying claims asserted as the predicate violation for Section 17200 have been dismissed).

Second, Plaintiff cannot maintain a *Tameny* claim based on the *Badih v. Myers* judicial decision.  To maintain a valid *Tameny* claim, the public policy must be tethered to policies delineated in a specific constitutional or statutory provision.  *Gantt v. Sentry Ins*., 1 Cal. 4th 1083, 1095 (1992), *overruled on other grounds in Green v. Ralee Eng'g. Co*., 19 Cal. 4th 66, 80 (1998) (constitutional or statutory basis required).  A prior judicial decision is an insufficient basis for a *Tameny* claim as a matter of law.  *See, e.g., Green*, 19 Cal. 4th at 71 ("We continue to believe that, aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state.").

1   Third, Plaintiff attempts to base her *Tameny* claim on the Unruh Act.  The relevant portion

2   of the Unruh Act provides that "[a]ll persons . . . are free and equal, and no matter what their sex,

3   race, color, religion, ancestry, national origin, [or] disability . . . are entitled to the full and equal

4   accommodations, advantages, facilities, privileges, or services in all business establishments of

5   every kind whatsoever."  Cal. Civ. Code § 51(b).  The California Supreme Court has held that

6   employees are excluded from coverage under the Unruh Act and the Act does not apply to

7   employment discrimination.  *Rojo v. Kliger*, 52 Cal. 3d 65, 77(1990) (the "Unruh Civil Rights

8   Act has no application to employment discrimination."); *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d

9   493, 500 (1970) (holding that an employee could not recover damages for wrongful termination

10   under the Unruh Act because his employer's discrimination did not constitute discrimination

11   "made by a business establishment" in the course of furnishing goods, services or facilities to its

12   clients, patrons, or customers).  Because Plaintiff is not covered under the Unruh Act, she

13   therefore cannot prove that her termination violated that Act as a matter of law.

14   Finally, to the extent Plaintiff purports to base her *Tameny* claim on "all other state and

15   federal statutes, regulations, administrative orders and ordinances that affect society at large"

16   (SAC ¶ 93), it must be dismissed as a matter of law.  It is Plaintiff's burden to provide the specific

17   statutes on which the claim is based.  *Green*, 19 Cal. 4th at 84.  As the California Supreme Court

18   noted in *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1257 (1994), vague charges of

19   violations unaccompanied by citations to specific statutory constitutional or statutory provisions

20   are "plainly insufficient to create an issue of material fact" because they put the defendant and the

21   court in the position of "having to guess at the nature of the public policies involved, if any."

22   **VI.    THE COURT SHOULD DISMISS COUNT FIFTEEN (UNFAIR COMPETITION
       LAW).**

23
24   Plaintiff's Count Fifteen for violation of California's unfair competition law, Bus. & Prof.

25   Code § 17200 fails because it is derivative of her discrimination, retaliation, and protected leave

     interference claims.  Because those claims fail for the reasons explained above, her unfair

26   competition claim also fails.  *See McCauley v. Stanford Univ. Med. Ctr.*, No. C07-1784, 2009 U.S.

27   Dist. LEXIS 18748, at *35-36 (N.D. Cal. Mar. 11, 2009) (holding that because plaintiff failed to

28

1    make out a case of discrimination, hostile work environment, or retaliation, her "claim of

2    violation of Cal. Bus. & Prof. Code § 17200 likewise fails, because there is no predicate violation

3    of statute upon which to base the action").

4    **VII.    THE COURT SHOULD DISMISS CERTAIN CLAIMS FOR RELIEF IN COUNT
            VII THAT ARE NOT AVAILABLE UNDER PAGA.**

5

6            In her Second Amended Response to Defendant IBM's Interrogatories, Phase 2, Set 1,

7    Response to Interrogatory No. 9 (attached as Ex. G to Butler Declaration), Plaintiff identifies by

8    category the items of damages and penalties she seeks on behalf of herself and the 24 other

9    PAGA members[8] in this case.  Although the dollar amount varies by PAGA member, the

10   categories of damages/penalties Plaintiff seeks to recover on behalf of each PAGA member are

11   identical.  Plaintiff is not entitled to recover many of the items of damages and/or penalties under

     PAGA as a matter of law.
12

13           **A.    The Court Should Dismiss Plaintiff's Claim For Statutory Penalties That Are
                  Not Available Under PAGA.**

14           Plaintiff seeks *statutory* penalties pursuant to Labor Code § 203[9] (waiting time penalties)

15   and Section 226(e) (failure to provide accurate itemized wage statements) on behalf of the PAGA

16   members.  (*See*, *e.g.*, Butler Decl., Ex. G (Pl.'s Second Amended Resp. to Interrogatory No. 9, at

17   96-100, 128-131).)  Plaintiff, however, is not entitled to statutory penalties, because the claims

18   that she asserts on behalf of the PAGA members are solely PAGA claims (as opposed to the class

19   Labor Code claims that she dropped from the SAC), and the sole remedy authorized under PAGA

20   is *civil* penalties.  *See* Cal. Lab. Code § 2699(a), (f); *see also Villacres v. ABM Indus., Inc.,* 189

21   Cal. App. 4th 562, 579 (2010) (holding that "PAGA is limited to the recovery of civil penalties",

22   and noting that some Labor Code provisions establish statutory penalties and some establish civil

23   penalties, "[b]ut only the recovery of the civil penalty falls within the PAGA"); *Home Depot USA,*

24           [8] On April 12, 2012, Defendants moved for partial summary judgment and partial
     judgment on the pleadings, seeking to narrow the scope of Plaintiff's PAGA claims.  (Notice of
25   Mot. and Mot. for Partial Summ. J. and Partial J. on the Pleadings, Dkt. No. 70.)  In an order
     dated October 30, 2012, the Court granted that motion in part, dismissing as time-barred
26   Plaintiff's claims on behalf of three employees.  (Order Granting in Part and Den. in Part Defs.'
     Mot. for Partial Summ. J. and Partial J. on the Pleadings, Dkt. No. 85.)  On March 28, 2013, the
27   Court entered a stipulated order dismissing Plaintiff's PAGA claims on behalf of Linda Benson.
     (Dkt. 129.)  Twenty-five PAGA members (including Plaintiff) remain in the case.
28           [9] All Section references are to the California Labor Code unless otherwise indicated.

*Inc. v. Sup. Ct.*, 191 Cal. App. 4th 210, 216 (2010) (noting that the "central provision of PAGA is section 2699" which "permits aggrieved employees to recover civil penalties that previously could be collected only by LWDA").  The Court should dismiss Plaintiff's claim on behalf of PAGA members for statutory penalties under Sections 203 and 226(e).

### B.    The Court Should Dismiss Plaintiff's PAGA Claims To The Extent Plaintiff Seeks Recovery of Section 2699(f) Penalties.

In her interrogatory responses, Plaintiff calculates PAGA penalties under Section 2699(a) and Section 2699(f).  (*See*, *e.g.*, Butler Decl. Ex. G (Pl.'s Second Amended Resp. to Interrogatory No. 9) at 100-112, 131-142.)  The Court should dismiss plaintiff's claim for penalties under Section 2699(f) for three separate and independent reasons.

First, the SAC does not state a claim for penalties under Section 2699(f).  *See, e.g., Villacres*, 189 Cal. App. 4th at 580 (concluding that a plaintiff in a PAGA suit must specify the PAGA provision under which penalties are sought).  In Count Seven, Plaintiff provides an almost verbatim quotation of all of the provisions of PAGA, but only seeks penalties under Section 2699(a).  Specifically, paragraph 73 of the SAC provides: "Plaintiff seeks penalties under Labor Code § 2699(a)" for: Violations of Labor Code §§  201, 203, 204, 204.3, 210, 226(A), 266(e), 226.3, 226.6, 226.7, 510, 512, 558, 1174(c), (d), 1174.5, 1198, and Wage Order 4-2001 Sections 11 and 12.  The SAC contains no mention of Section 2699(f) penalties.  Accordingly, this Court should dismiss Plaintiff's claim for civil penalties under Section 2699(f).  *See, e.g., Coleman*, 232 F.3d at 1294 (affirming district court's dismissal of plaintiffs' disparate impact claims on the grounds that they had not pled this theory of liability in their complaint).

Second, Plaintiff's claim for Section 2699(f) penalties fails for the separate and independent reason that such penalties are not available for the Labor Code violations that Plaintiff alleges.  Section 2699(f) provides a "default" penalty for alleged violations of Labor Code provisions for which no penalty is provided.  Cal. Lab. Code § 2699(f) ("For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions as follows:  …one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for

1   each aggrieved employee per pay period for each subsequent violation.").  By contrast, where a

2   provision of the Labor Code provides for a civil penalty to be assessed and recovered by the

3   LWDA, Section 2699(a) allows an aggrieved employee to pursue only that penalty.  Cal. Lab.

4   Code § 2699(a).

5           Here, Plaintiff alleges overtime and meal and rest break violations and contends that the

6   penalty for such violations is set forth in Labor Code Section 558(a).  (*See, e.g.*, Butler Decl. Ex.

7   G (Pl.'s Second Amended Resp. to Interrogatory No. 9 at 105-109, 136-139).)  Because she

8   contends that the penalty for these alleged violations is already provided in a Labor Code Section

9   558(a), she cannot seek to recover the "default" penalty set forth in Section 2699(f), which

10  applies only where the Labor Code does not provide a penalty for the violation at issue.[10]

11          Third, Plaintiff calculates penalties under Section 2699(f) for alleged violations of

12  Sections 3A and 7 of the Wage Order.  *See, e.g.,* Butler Decl., Ex. G (Pl.'s Second Amended Resp.

13  to Interrogatory No. 9, at 109-110, 140-141).  Plaintiff did not allege violations of these Wage

14  Order provisions in the SAC, and thus cannot seek recovery for such alleged violations.  SAC,

15  ¶¶ 69-73; *see also Coleman*, 232 F.3d at 1294.

16          **C.      The Court Should Dismiss Plaintiff's Claims For Heightened Penalties That
17                    Are Not Available For Initial Violations.**

            In calculating her estimated PAGA penalties for the alleged violations of Sections 204,
18
    510, 512, and 1198, Plaintiff incorrectly applied the heightened penalty amounts referenced in
19
    Sections 210(a), 558(a), and 2699(f)[11].  *See, e.g.,* Butler Decl. Ex. G (Pl.'s Second Amended Resp.
20
    to Interrogatory No. 9, at 100-102, 105-112, 131-142).  Each of those sections provides for a
21
    specified civil penalty amount for any "initial violation" and a higher penalty amount for "each
22
    subsequent violation."  *See* Cal. Lab. Code §§ 210(a), 558(a), 2699(f).  "Under California law,
23

24          [10] If Plaintiff is permitted to pursue the default penalty under Section 2699(f) (she should
    not be), the Court should dismiss Plaintiff's claim under that provision for multiple penalties for
25  the same violations.  *See, e.g.,* Butler Decl. Ex. G (Pl.'s Second Amended Resp. to Interrogatory
    No. 9, at 100-112, 131-141 (Plaintiff's response to interrogatory number 9 doubles and
26  sometimes triples the penalty calculation for the same alleged violation, despite the clear
    language of 2699(f) providing for a single calculation per violation).

27          [11] Plaintiff cannot recover penalties under Section 2699(f) for the reasons explained above.
    Even assuming *arguendo* that she could, she is not entitled to the heightened penalty amounts
28  under that section.

1    courts have held that employers are not subject to heightened penalties for subsequent violations

2    unless and until a court or commissioner notifies the employer that it is in violation of the Labor

3    Code." *Trang v. Turbine Engine Components Techs. Corp.*, No. CV 12-07658, 2012 U.S. Dist.

4    LEXIS 179710, at *13-14 (C.D. Cal. Dec. 19, 2012) (citing *Amaral v. Cintas Corp. No. 2*, 163

5    Cal. App. 4th 1157 (2008); *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*,

6    No. 05CV1199, 2009 U.S. Dist. LEXIS 69842, at *9 (S.D. Cal. Aug. 10, 2009)). As explained by

7    the court in *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008):

8
9
10
11
12
13
> [u]ntil an employer has been notified that it is violating a California
> Labor Code provision … the employer cannot be presumed to be
> aware that its continuing underpayment of employees is a violation
> subject to penalties. However, after the employer has learned its
> conduct violates the Labor Code, the employer is on notice that any
> future violations will be punished just the same as violations that
> are willful or intentional-i.e., they [will result in higher penalties
> than] could have been imposed or that were imposed for the initial
> violation.

14   Plaintiff presents no evidence that Defendants were put on notice by a court or

15   commissioner order that they were in violation of the Labor Code provisions at issue.

16   Accordingly, the Court should dismiss Plaintiff's claim for heightened penalty amounts.

17   **D.    The Court Should Dismiss Plaintiff's Claim For Interest On Her PAGA
         Penalty Claims.**

18   Plaintiff improperly incorporates prejudgment interest into her penalty calculations under

19   Section 558(a). *See, e.g.,* Butler Decl. Ex. G (Pl.'s Second Amended Resp. to Interrogatory No. 9,

20   at 100-109, 131-139). *See Rodgers v. U.S.*, 332 U.S. 371, 374-376 (1947) (penalties are not

21   normally subject to prejudgment interest); *American Timber & Trading Co. v. First Nat'l Bank of*

22   *Or.*, 690 F.2d 781, 786 (9th Cir. 1982) (courts "have continued to disfavor interest on penalties . . .

23   and prejudgment interest on [penalties] remains the exception and not the rule"). *Cf. Drumm v.*

24   *Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1021-1022 (N.D. Cal. 2010) (declining to award

25   prejudgment interest to Labor Code § 203 waiting time penalty award). Accordingly, Defendants

26   are entitled to summary judgment of Plaintiff's claim for prejudgment interest on her penalty

27   calculations under Section 558(a).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, IBM respectfully requests that the Court grant its Motion.

Dated: March 29, 2013

Respectfully submitted,

JONES DAY

By: /s/ Wendy C. Butler

Wendy C. Butler
Counsel for Defendants

NYI-4509374v8