1  ALAN B. BAYER (State Bar Number 216706)
   HEATHER E. BORLASE (State Bar Number 216729)
2  BAYER & BORLASE
   912 Cole Street, #238
3  San Francisco, CA  94117
   (415) 558-9960
4  fax (415) 558-9970

5  Attorneys for Plaintiff and PAGA members
   MAY MOUA

6

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10 MAY MOUA, individually and on behalf      )  Case No.: C 10-01070 EJD
   of other former and current employees, and )
11 for the interest of the general public     )  OPPOSITION TO DEFENDANTS'
                                              )  MOTION FOR PARTIAL SUMMARY
12                                            )  JUDGMENT AS TO PLAINTIFF'S
                 Plaintiff,                   )  CLAIMS IN COUNTS 7-15
13          vs.                               )
                                              )
14                                            )
   INTERNATIONAL BUSINESS                     )
15 MACHINES CORPORATION, a                    )  Date: July 19, 2013
   California business entity, form unknown,   )  Time: 9:00 a.m.
16 JOSEPH KOENIG, an Individual,              )  Courtroom: 4, 5th Floor
   VENKATASUBRAMANIAM IYER, an                )            Honorable Edward Davila
17 Individual, and DOES 1-199,                )
                                              )
18                                            )
                                              )
19               Defendants                   )
                                              )
20 _____  )

21 //

22 //

23 //

24 //

25

OPPOSITON TO MOTION FOR SUMMARY JUDGMENT RE: MAY MOUA
*Moua v. IBM et al.*

1

## <u>TABLE OF CONTENTS</u>

2

3   I.     STANDARD OF REVIEW……………………………………………....1

4   II.    PLAINTIFF'S UNDISPUTED MATERIAL FACTS…………………………1

5
        A. When Informed about Moua's Pregnancy Iyer Makes Comments
6           Which Demonstrate Discriminatory Animus………………………………2

7
        B. Iyer Infects the Decision Making Process With His
8           Animus By Discussing Moua's Pregnancy and Maternity
            Leave……………………………………………………………………2
9
        C. Iyer Conflates Moua's Maternity Leave and Termination Into His
10          Rationale for Transfarring Her Duties……………………………………..4

11      D. IBM Provided Vascillating Explanations for the Reasons Behind its
12          Decision to Select Moua for Termination…………………………………6

13

14  III.   LEGAL ARGUMENT…………………………………………………....7

15      A. Gender and Pregnancy Discrimination……………………………………7

16          1.  Defendant Iyer's Remarks about Moua's Pregnancy Raise a
17              Reasonable Inference of Discrimination  …..…………...…….....…8

18          2.  Defendant Iyer's Bias Infected the Selection Process…………..…10

19
            3.  Defendants' Shifting Explanation for Moua's Layoff……………..12
20

21          4.  Defendant Iyer Excluded Moua for Career Advance Opportunities
22              after He Learned of Her Pregnancy…………………..……………13

23
        B. Defendant Interfered with Plaintiff's Pregnancy Disability Leave and
24          California Family Rights Act Rights……………………………..………13

        C. Defendant Wrongfully Terminated Plaintiff in

25

OPPOSITON TO MOTION FOR SUMMARY JUDGMENT RE: MAY MOUA
*Moua v. IBM et al.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Violation of Public Policy……………………………..…………………15

D.  Unfair Business Practices……………..…………………………………16

E.  Plaintiff's PAGA Claim is Not Subject to Summary Judgment………….17

    1.  PAGA Allows Plaintiff to Capture Waiting Time Penalties
       on Behalf of Herself and All Current and
       Former Employees……………………………………………………17

    2.  PAGA Authorizes Plaintiff to Recover Labor Code §226(e)
       Penalties……………………………………………………………17

    3.  PAGA Authorizes Plaintiff to Recover Penalties Under
       § 2699 (f)…………………....………………………………………19

    4.  Plaintiff is Authorized to Recover Penalties Under §§558 and 2699
       (f)
       Simultaneously…………………………………………………………21

    5.  PAGA Authorizes Plaintiff to Recover Penalties for Violations of §§
       3(A) and 7 of the Industrial Welfare Commission Wage Order 4-
       2001……………………………………………………………..21

    6.  § 210 Authorizes Plaintiff to Seek Heightened Penalties for
       Defendants' Willful or Intentional Violations of the
       Labor Code…………….………………………………………………22

    7.  Defendants are Liable for Heightened Penalties Under
       § 2699 (f)………………………………….…………………………23

    8.  Defendants are Liable for Heightened Penalties for Their
       Violations of § 558…....………………………………………………24

IV.     CONCLUSION………………………………………………………........ 25

# <u>TABLE OF AUTHORITIES</u>

## <u>California Cases</u>

*Amaral v. Cintas Corp. No. 2* (2008)
163 Cal.App.4th 1157 …………………………………………………………………23, 24

*Badih v. Myers* (1995)
36 Cal.App.4th 1289……………………………………………………………………7

*Caldwell v. Paramount Unified School District* (1995)
41 Cal.App.4th 189……………………………………………………….………………9

*Faust v. California Portland Cement, Co.* (2007)
150 Cal.App.4th 864………………………………….....………………………………16

*Industrial Welfare Com. v. Superior Court* (1980)
27 Cal. 3d 690………………………………………………………………………24

*Rojo v. Kliger* (1990)
52 Cal. 3d 65………………………………………………………………………..16

*Stevenson v Superior Court* (1997)
16 Cal. 4th 880…………………….....…………………………………………………16

*Tameny v. Atlantic Richfield Co.* (1980)
27 Cal. 3d 167………………………………………………………………………16

*Villacres v. ABM Industries Inc.* (2010)
189 Cal.App.4th 562…………………………………………………………………20

## <u>Federal Cases</u>

## Supreme Court Cases

*Anderson v. Liberty Lobby, Inc.* (1986)
477 U.S. 242…………………………………………………………………………1

*Celotex Corp. v. Catrett*, (1986)
477 U.S. 317…………………………………………………………………………1

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1968)

475 U.S. 574……………………………………………………………....1

*Texas Dep't of Community Affairs v. Burdine,* (1981)
450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089…………...…………………….8

**Courts of Appeal**


*Albert v. Carovano* (2nd Cir. 1988)
851 F2d 561……………………………………………………....20

*Cronin v. Aetna,* (2d Cir. 1995)
46 F.3d 196…………………………………………………………9

*Crull v. GEM Ins. Co.* (9th Cir. 1995)
58 F3d 1386……………………………………………………….20

*Hodges v General Dynamics Corp,* (1st Cir 1998)
144 F.3d 151……………………………………………………12

*Holtz v. Rockefeller & Co.,* (2d Cir. 2001)
258 F.3d 62……………………………………………………..…9

*Liu v Amway,* (9th. Cir 2003)
347 F.3d 1125……………………………………………………12

*Lowe v. City of Monrovia,* (9th. Cir. 1985)
775 F.2d 998, 1005…………………………………………………..8

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* (9th Cir. 2000)
210 F.3d 1099…………………………………………………1

*Payne v. Norwest Corp.,* (9th Cir. 1997)
113 F.3d 1079………………………………………………..13

*Renz v. Grey Advertising, Inc.,* (2d Cir. 1997)
135 F.3d 217……………………………………………......………9

*Sischo-Nownejad v. Merced Cmty. College Dist.,* (9th Cir. 1991)
934 F.2d 1104……………………………………………………8

**District Courts**

*DiAmore v. Am. Honda Motor Co.*, (2002 D.C. Conn)
No. 3:01-CV-961 (EBB) MBS, 2002 U.S. Dist LEXIS 25770……………………………15

*Hastey v. Mattell, Inc.*, (C.D. CA August 18, 2004)
No. SA CV 03-0900 CJC (CTx), 2004 U.S. Dist. LEXIS 31228……………………..8, 10

*Quinlan v. Elysian Hotel Co. LLC*,(N.D.Ill January 4, 2012)
No. 11 C 5956 , 2013 U.S. Dist. LEXIS 1698……………………………………………10

*Vosdigh v. Quest Dex, Inc.*, (D. Minn. June 2, 2005)
No. 03-4284 ADM/AJB, 2005 LEXIS 10721, 2005 WL 1323007………...……………11

**Federal Statute and Regulations**

Fed. R. Civ. Proc. 56………………………………………………………………………...1


**California Statutes and Regulations**

Bus. & Prof. Code § 17200……………………………...…………………………16

Government Code § 12940……………………………………………………………7

Government Code § 12945 (a)…………………...……………………………13, 14

Government Code § 12945.2 (a)……………………………………………………13

Government Code § 12945.2 (c) (3)…………………………………………...…13

Government Code § 12945.2 (c) (4)…………………………………………………14

Labor Code § 201………………………………………………………...……17

Labor Code § 203………………………………………………………………17

Labor Code § 204…………………………………………………………22

Labor Code § 210……………………………………………………...…………22

Labor Code § 226 (a)…………………………………………………………...…18

Labor Code § 226 (e)………….……………………...…………………………17, 18

Labor Code § 256…………………………………………………...…………17

Labor Code § 558 …………………………………………………………21, 24

OPPOSITON TO MOTION FOR SUMMARY JUDGMENT RE: MAY MOUA
*Moua v. IBM et al.*

1  Labor Code § 1198……………………………………………………………………19

2  Labor Code § 2699……………………………………………………………………19

3  Labor Code § 2699 (f)…………………………………...……………18, 19, 20, 23, 24

4  Labor Code § 2699.5………………………………………………………………...18

5  2 Cal. Code Regs. § 7291.9 (c) (1)…………………………………………………14

6  IWC Wage Order 4-2001…………………………………………...…………19, 21, 22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OPPOSITON TO MOTION FOR SUMMARY JUDGMENT RE: MAY MOUA
*Moua v. IBM et al.*

## I.   STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56.  The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations and citations omitted). If the nonmoving party's evidence is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-250, 106 S. Ct. 2505, 91 L. Ed 2d 202 (1986).  Courts, however, are required to view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.  *Liberty Lobby*, 477 U.S. at 248.

Defendants have not met their burden of establishing that there are no disputed material facts as to whether they violated FEHA or PAGA with respect to May Moua. Likewise, they have not established that they are entitled to judgment as a matter of law on any of her claims.  Defendants' motion for summary judgment should be denied.

## II.   PLAINTIFF'S UNDISPUTED MATERIAL FACTS

Moua was employed by Corio on Peoplesoft before Iyer joined the company, as well as before Kancherla and Aquino.  [Exhibit 1 to Declaration of Alan Bayer (Iyer

Depo., 13:13-22)].  She was the most experienced member of the team in consideration

for layoff in early 2009.  At the time of her termination, Moua was part of the service

delivery management team.  Her position was called a functional business process leader.

[Exhibit 1 to Bayer Decl. (Iyer Depo., 9:15-21)].

**A. When Informed About Moua's Pregnancy, Iyer Makes Comments Which Demonstrate Discriminatory Animus**

During deposition, Moua recalled the conversation in which she disclosed her

pregnancy to Iyer.  The conversation occurred shortly before Iyer was informed of the

pending layoffs.  [Exhibit 1 to Bayer Decl. (Iyer Depo., 24:7-23)].  Moua described the

communications as follows:

> "So when I first told Venkat that I was pregnant, he had made a comment saying that he doesn't see how -- he said that -- he has two kids of his own. So he said that he can't imagine how I can do it. Having his two kids is already hard enough; he can't imagine how I'd be able to balance life and work with four kids, because that would be my fourth child.
> He also asked if I was going to have any more kids.
> Q. When did he ask you if you were going to have any more kids?
> A. In the same conversation, when I told him that I was pregnant.
> Q. And what did you -- what was your response?
> A. I said I wasn't sure."

[Exhibit 2 to Bayer Decl. (Moua Depo., 86:6-20)].[1]

**B. Iyer Infects the Decision Making Process With His Animus By Discussing Moua's Pregnancy and Maternity Leave**

Sanje Kak, Iyer's supervisor, informed Iyer in November of 2008 that layoffs were

coming and the Iyer needed to lose one person from the technical team and one person

from the functional team.  [Exhibit 1 to Bayer Decl. (Iyer Depo., 15:7-19; 16:6-8; 17:5-9;

---

[1] Defendants' arguments related to this conversation, located in its moving papers at 12:11-17, are strikingly disingenuous.  The above testimony is unambiguous – Iyer's comments were exclusively aimed at Moua's ability to handle her work with four children.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

18:7-9)].  Kak "…told us about the decision, what needs to be done; …, [to] make sure that before we embark on the exercise, we know exactly what are the ground rules and how IBM conducts this whole process." [Exhibit 1 to Bayer Decl. (Iyer Depo., 20:7-14)]. IBM structured a team based decision, with that hope that it will prevent bias by any individual.  [Exhibit 1 to Bayer Dec. (Iyer Depo., 13:23-15:6)].

Iyer was assigned an HR partner, in case he felt like he was "not doing the right thing." [Exhibit 1 to Bayer Decl. (Iyer Depo., 18:25-20:1)].  Iyer's HR partner for the layoff was Mary Crowley. [Exhibit 1 to Bayer Decl. (Iyer Deposition 21:16-18)].

In January 2009, concerned about his selection of Moua for termination, Iyer spoke with HR (Crowley) about whether or not Moua's pregnant status could be considered.  [Exhibit 1 to Bayer Decl. (Iyer Depo., 25:3-17; 25:21-26:1; 26:9-14)].  Iyer testified that the conversation involved other topics and lasted 15 to 20 minutes overall, but that 10 minutes of his discussion directly related to Moua.  [Exhibit 1 to Bayer Decl. (Iyer Depo., 26:15-22)].   Iyer informed Crowley, "…why we were trying to zero in on [Moua] as the possible candidate."   He informed her "why I am making the decision I am taking; and also the fact that Moua is on maternity leave." [Exhibit 1 to Bayer Dec. (Iyer Depo., 27:10-23)].

In order to obtain final approval for decision to terminate Moua, Iyer participated in a conference call with managers Sanje Kak, Mauricio Meyer, Ramesh Kumble, and Erick Warner to discuss his selection of Moua as the layoff candidate.  Crowley (HR) did not participate in that discussion. [Exhibit 1 to Bayer Dec. (Iyer Depo., 59:3-24)].

Each of the participants were provided Iyer's evaluation of Moua, which Iyer described as "…generally her past performance. The role that is playing, what they are doing in that role, what is expected, all those -- what was key to that was provided…"

[Exhibit 1 to Bayer Dec. (Iyer Depo., 61:1-7)].  The group had the same information for Aquino and Kancherla.  [Exhibit 1 to Bayer Decl. (Iyer Depo., 61:8-10)].

During that meeting, Iyer informed the group that Moua would soon be out on maternity leave:

> Q. Were they informed that May Moua was going to be taking leave?
> A. Yes.
> Q. Why were they informed that May Moua was going to be taking leave?
> A. Why were they informed? Because we – we had to tell them that she is -- she is pregnant and she has got -- at some point in time she would have to go on maternity leave.

[Exhibit 1 to Bayer Decl. (Iyer Depo., 61:11-19)].

### C.  Iyer Conflates Moua's Maternity Leave and Termination Into His Rationale for Transferring Her Duties.

Iyer admitted that Moua informed him about her pregnancy in November 2008, before Kak told him of the lay-offs. [Exhibit 1 to Bayer Decl. (Iyer Depo. 24:7-23)].  Her anticipated due date was May 13, 2009.  [Exhibit 2 to Bayer Decl. (Moua Depo., 43:14-16)].  Moua first discussed her plans for maternity leave with Iyer in early February of 2009. [Exhibit 2 to Bayer Decl. (Moua Depo., 43:9-13; Exhibit 1 to Bayer Decl. (Iyer Depo., 32:21-33:16)].  At that time, the final decision to terminate Moua was not made. [Exhibit 1 to Bayer Decl. (Iyer Depo., 35:9-12)].

Based on complications with her previous pregnancies, her doctor indicated that she would likely be able to work until mid-March 2009. [Exhibit 2 to Bayer Decl. (Moua Depo., 43:18-44:11)].  According to her discussions with Iyer and her plan, Plaintiff's pregnancy disability leave was scheduled to end on June 29, 2009. [Exhibit 2 to Bayer Decl (Moua Depo. 47:19-22)].  Her leave under the Pregnancy Disability Leave Law ("PDLL" and the California Family Rights Act ("CFRA") was scheduled to end on August 10, 2009. [Exhibit 2 to Bayer Decl., (Moua Depo., 46:24-47:5)].  Iyer forwarded

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 4 -

those plans to Kak and Crowley.  [Exhibit 1 to Bayer Depo., (Iyer Depo. 34:22-35:8)].

The decision to terminate Moua occurred a couple of weeks after Moua and Iyer

discussed her leave in mid-February.  [Exhibit 1 to Bayer Decl. (Iyer Depo. 35:13-18;

23:21-24:6)].

      The discussion arose when, in early February 2009, Moua's doctor placed her on

disability for one day.  Upon her return from the one day leave, Iyer asked Moua about

her plans for her full maternity leave.  Due to complications with her last pregnancy, her

doctor recommended she begin her leave in mid-March.   [Exhibit 2 to Bayer Decl.

(Moua Depo., 43:18-44:15)]. The layoffs were schedule to go into effect in Mid-March,

the exact same time Moua was schedule to go out on her leave. [Exhibit 1 to Bayer Decl.

(Iyer Depo. 45:19-24)].

      Even though Moua was not scheduled to begin her leave for another month, Iyer

directed her to begin transferring her duties to other employees, with all duties being fully

transferred by early March- weeks before her leave was scheduled to begin.  [Exhibit 2 to

Bayer Decl. (Moua Depo. 44:12-21)].  In deposition, Iyer discussed his decision to begin

the transfer of duties a month before Plaintiff's leave was set to begin, conflating his

decision to layoff Moua into his rationale for the transfer of the duties. [2]

        "Q. … Do you recall having a conversation with May Moua about transferring her work responsibilities over? Do you remember having that conversation with May Moua?
        A. I wouldn't say it was a transfer at that point of time. It was more a person filling in the gap in their absence. So I don't know how we will interpret the two.
        So when I had that conversation with her, which would happen in February, early as you say, while we had zeroed in and identified by

---

[2]   Moua informed Iyer of her mid-March leave date in early February, weeks prior to the meeting with Kak, Meyer, Kumble, and Warner, where Iyer obtained the final approval to terminate her.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 5 -

somewhere in the early to late January, early February, that this may be the possible people.

See, there are a lot of things that happen; and unless it's finalized and -- And I have seen in cases in the past where we have taken a decision that this person is RA and suddenly things change and we roll it back.

So you -- So that's -- So unless you get the final-final go-ahead from the top saying,

"This decision is final," this -- we assume the things are -- nothing is changed.

So the time when she would have gone on leave, which would have been in February you say, although I had a rough idea that this is what we are working at, I didn't have a definite clue, somebody telling me this is the time we need to take the decision.

So when I had that conversation with Meya about trans -- transferring the decision, it was not: Okay. Now this person from this day is taking over what you are doing.

See, she -- he or she who was working, that person will be filling in the gap while in your absence. That was the objective, if that's what you were trying to allude to.

[Exhibit 1 to Bayer Decl., (Iyer Depo. 28:14 - 32:14)].

### D. IBM Provided Vascillating Explanations For the Reasons Behind its Decision to Select Moua for Termination.

Sanje Kak informed Iyer in November of 2008 that he needed to lose one person from the technical team and one person from the functional team.  [Exhibit 1 to Bayer Decl., (Iyer Depo. 15:7-19; 16:6-8; 17:5-9; 18:7-9)].  However, by the time the layoffs were implemented, only Moua (functional) was actually replaced.  The technical team had the same number of members after the layoff as before.  IBM seamlessly replaced Renee Erdem with Jason Drury.  [Exhibit 1 to Bayer Decl. (Iyer Depo. 36:14-40:7, 41:17-19; 45:7-13)].

At the time Moua was informed of her termination, Iyer explained that her performance and seniority were not factors. [Exhibit 2 to Bayer Decl. (Moua Depo., 28:19-29:6.)]  He then changed that position, informing her that performance was an issue, but "not heavily weighed."  [*Id.*]  Mary Crowley also informed Moua that

1   performance was not a factor.  [Exhibit 2 to Bayer Decl. (Moua Depo., 88:5-18)].  In its

2   moving papers, however, Defendants assert that the decision was based upon

3   performance.  [Moving papers, 4:7-9, fn. 3].

4           Iyer also testified that his decision to select Moua was based upon his ability "...to

5   manage with the least amount of indecision and the most whole efficiency will be more

6   seamless."  [Exhibit 1 to Bayer Decl. (Iyer Depo. 46:20-48:20)].  Moua's leave would not

7   lead to *efficiency or a seamless transition*, nor could Iyer "imagine how [Moua would] be

8   able to balance life and work with four kids…"

9   **III.   LEGAL ARGUMENT**

10          The Fair Employment and Housing Act (FEHA) constitutes remedial legislation.

11  See *Robinson v. Fair Employment & Housing Com*., (1992) 2 Cal. 4th 226, 243

12  ("Because the FEHA is remedial legislation, which declares '[t]he opportunity to seek,

13  obtain and hold employment without discrimination' to be a civil right (§ 12921), and

14  expresses a legislative policy that it is necessary to protect and safeguard that right (§

15  12920), the court must construe the FEHA broadly... Section 12993, subdivision (a)

16  directs: 'The provisions of this part shall be construed liberally for the accomplishment

17  of the purposes thereof.'").  Plaintiff adduced sufficient evidence to create a reasonable

18  inference that her pregnancy and/or pregnancy related leave were a factor in IBM's

19  decision to terminate her employment.

20          **A.  Gender and Pregnancy Discrimination**

21          Pregnancy discrimination is a form of gender discrimination.  *Badih v. Myers*

22  (1995) 36 Cal.App.4th 1289.  Discrimination on the basis of sex under FEHA

23  (Government Code § 12940(a)) also includes discrimination on the basis of exercising

24  one's right to maternity leave because Government Code 12926 (p) defines sex" as

25  including, but not limited to, gender, pregnancy, childbirth, or medical conditions related

to pregnancy and childbirth.  *Hastey v. Mattell, Inc*., No. SA CV 03-0900 CJC (CTx), (C.D. CA August 18, 2004), 2004 U.S. Dist. LEXIS 31228.

*Sischo-Nownejad v. Merced Cmty. College Dist*., 934 F.2d 1104 (9th Cir. 1991) stated at 1110-1111:

> In order to show a prima facie case of discrimination, "a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" [*Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th. Cir. 1985)] (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is "very little." *Id*. at 1009. Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits. *Id*. Even if the defendant articulates a legitimate, nondiscriminatory reason for the challenged employment decision, thus shifting the burden to the plaintiff to prove that the articulated reason is pretextual, summary judgment is normally inappropriate. "When a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Id*. (emphasis added). Specifically, in evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case. *Id*. at 1008. When that evidence, direct or circumstantial, consists of more than the McDonnell Douglas presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment. *Id*. at 1009.

A plaintiff may establish pretext 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine* 450 U.S. 248, 256 (1981).  "The plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the

decision, or that the employer's proffered reasons played no role in the employment decision, but only that any lawful motives were not the only reasons and that the plaintiff's protected status contributed to the employer's decision. See *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78-79 (2d Cir. 2001); *Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 220-222 (2d Cir. 1997); *Cronin v. Aetna*, 46 F.3d 196, 203 (2d Cir. 1995).  Plaintiff must show that the employer harbored a discriminatory intent. Plaintiff does not need direct evidence of the employer's intent, but will instead can rely on circumstantial evidence and the inferences that may be drawn therefrom." *Caldwell v. Paramount Unified School District* (1995) 41 Cal.App.4th 189, 195.

Plaintiff's evidence creates a reasonable inference that a discriminatory animus motivated the selection of Moua for layoff.  As such, summary judgment should be denied.

### 1.   Defendant Iyer's Remarks about Moua's Pregnancy Raise a Reasonable Inference of Discrimination

Iyer's fixation on Plaintiff's pregnancy and her ability to perform her job in the wake of yet another child was immediate.  During the conversation in which Moua disclosed her pregnancy to Iyer, he disclosed his bias:

> "So when I first told Venkat that I was pregnant, he had made a comment saying that he doesn't see how -- he said that -- he has two kids of his own. So he said that he can't imagine how I can do it. Having his two kids is already hard enough; he can't imagine how I'd be able to balance life and work with four kids, because that would be my fourth child.
> He also asked if I was going to have any more kids.

[Exhibit 2 to Bayer Decl., (Moua Depo 86:6-20)].

Courts have found similar comments to evidence discriminatory motive.  For example:

> "What are you going to do about your job?  It's hard to come back after having a child."

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 9 -

 "It's hard to do this job with two kids, look what happened to [a female
coworker who left after six months of maternity leave]."
*Vosdigh v. Quest Dex, Inc.,* No. 03-4284 ADM/AJB (D.Minn., June 2, 2005),
2005 LEXIS 10721 at *7.

 "Was it planned?"
 "That's it, right?"
 "You're not having any more, are you?"

*Hastey v. Mattel, Inc.*, No. SA CV 03-0900 CJC (CTx) (C.D. CA August 18,
2004) 2004 U.S. Dist. LEXIS 31228 at *7.

See also *Quinlan v. Elysian Hotel Co. LLC*, No. 11 C 5956 (N.D.Ill January 4, 2012),

2013 U.S. Dist. LEXIS 1698 (defendants questions to pregnant plaintiff about how she

was "going to manage a baby and this workload" because "this workload's not going to

change" constitute sufficient circumstantial evidence of discrimination to defeat summary

judgment).  Iyer's statements to Moua constitute sufficient circumstantial evidence to

defeat summary judgment alone.

## 2. Defendant Iyer's Bias Infected the Selection Process

Iyer testified that the decision to lay Moua off was "a team decision."  [Exhibit 1

to Bayer Decl. (Iyer Depo. 13:23-15:6)].  However, Iyer infected the selection process

with his bias on more than one occasion.  For example, Iyer was assigned an HR partner

(Mary Crowley), in case he felt like he was "not doing the right thing."  [Exhibit 1 to

Bayer Decl. (Iyer Depo. 18:25-20:1)].  Concerned over his desire to terminate Moua, Iyer

met with Crowley a month before the approval of his decision.  He spoke with Crowley

about whether or not Moua's pregnant status could be considered [Exhibit 1 to Bayer

Decl. (Iyer Depo. 25:3-17; 25:21-26:1; 26:9-14)] and focused on "…why we were trying

to zero in on [Moua] as the possible candidate."   He also informed Crowley "why I am

making the decision I am taking; and also the fact that Moua is on maternity leave."

[Exhibit 1 to Bayer Decl. (Iyer Deposition 27:10-23)].

Iyer's testimony establishes that he conflated his decision to terminate Moua with her pregnancy leave.  Prior to disclosing Moua's pregnancy to the other managers confirming his decision, Iyer requested Moua's plans for maternity leave and instructed her to transfer her duties over to other team members, after a one day medical leave. [Exhibit 2 to Bayer Decl. (Moua Depo. 44:12-21)].   Iyer testified his request to transfer duties was to "fill in the gap" while Moua was on leave, adding that he had "zeroed in" on his selection for layoff, and was awaiting finalization of his decision. [Exhibit 1 to Bayer Decl., (Iyer Depo. 28:14 - 32:14)].

Iyer infected that process by disclosing Moua's leave to the other managers.

> Q.    Were they informed that May Moua was going to be taking leave?
> A.    Yes.
> Q.    Why were they informed that May Moua was going to be taking leave?
> A..   Why were they informed?  Because we – we had to tell them that she is – she is pregnant and she has got – at some point in time she would have to go on maternity leave.

[Exhibit 1 to Bayer Decl. (Iyer Depo., 61:11-19)].

Iyer carried his bias into the decision making process, disclosing prejudicial and extraneous information.  This is traditionally a basis for establishing discriminatory animus.  See *Vosdigh v. Quest Dex, Inc*., No. 03-4284 ADM/AJB (D. Minn. June 2, 2005) 2005 LEXIS 10721, 2005 WL 1323007 at *9 (evidence Defendants may have considered plaintiff's pregnancy and impending leave when considering whether to demote her is sufficient to demonstrate pretext).  Defendants present no evidence that other managers did not consider Moua's maternity leave (scheduled to occur at the same time the layoffs were to take effect) or her pregnancy in the decision making process.

Here the decision to terminate Moua was made at the same time her leave was disclosed to the managers.  Additionally, her leave was set to begin at the exact time the

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 11

1    layoffs were schedule to be effectuated.  A termination decision that is contemporaneous

2    with maternity leave supports an inference that there is a causal connection between the

3    two events.  *Liu v Amway*, 347 F.3d 1125, 1137 (9th. Cir 2003) (*citing Hodges v General

4    Dynamics Corp*, 144 F.3d 151, 168 (1st. Cir 1998)).  Defendants cannot establish as a

5    matter of law that Moua's protected characteristics were not a motivating reason for the

6    decision to terminate her.  Accordingly, summary judgment should be denied.

7                    **3.  Defendants' Shifting Explanation for Moua's Layoff**

8           The undisputed evidence establishes that Defendants gave Moua fundamentally

9    different justifications for her selection for layoff.  These shifting explanations are

10   evidence of pretext.

11          Initially, Iyer was informed to lose one person from the technical team and one

12   person from the functional team.  [Exhibit 1 to Bayer Decl. (Iyer Depo. 15:7-19; 16:6-8;

13   17:5-9; 18:7-9)].  But, that didn't happen.  The technical team immediately replaced the

14   position with Jason Drury, leaving Moua as the only layoff under Iyer's supervision.

15   [Exhibit 1 to Bayer Decl. (Iyer Depo. 36:14- 40:7, 41:17-19; 45:7-13)].

16          Moua was told by Iyer that her performance and seniority were not factors in the

17   decision to terminate her.  Mary Crowley also informed Moua that performance was not a

18   factor.  Shortly thereafter, he informed her that performance was an issue, but not heavily

19   weighed.  [Exhibit 2 to Bayer Decl. (Moua Depo., 88:5-18)].  Defendants now assert that

20   the decision was based upon performance.  [Moving papers, 4:7-9, fn. 3.]  In deposition,

21   Iyer then included that his decision to select Moua was based upon his ability "...to

22   manage with the least amount of indecision and the most whole efficiency will be more

23   seamless." [Exhibit 1 to Bayer Decl. (Iyer Depo. 46:20-48:20)].  These shifting

24   explanations demonstrate Iyer's consideration of Moua's maternity leave as a factor in

25   his decision.  "[F]undamentally different justifications for an employer's action would

1  give rise to a genuine issue of fact with respect to pretext since they suggest the

2  possibility that neither of the official reasons was the true reason."  *Payne v. Norwest*

3  *Corp.,* 113 F.3d 1079, 1080 (9th Cir. 1997).  Defendants' motion for summary judgment

4  should be denied.

### 4.  Defendant Iyer Excluded Moua for Career Advancement Opportunities after He Learned of Her Pregnancy

6      Iyer informed Moua that she was not selected to attend an industry event because

7  he was concerned about her driving to the conference while pregnant.  [Exhibit 2 to

8  Bayer Decl. (Moua Depo. 168:23-169:7)].  This patronizing decision further

9  demonstrates Iyer's animus.

### B.  Defendant Interfered with Plaintiff's Pregnancy Disability Leave and California Family Rights Act

12      The California Pregnancy Disability leave Law ("PDLL") requires employers to

13  provide employees up to four months of leave per pregnancy for pregnancy, childbirth

14  and related medical conditions.  Government Code § 12945 (a).  Following a pregnancy

15  disability leave, an employee generally has the right to be reinstated to the same position

16  she held before the leave.  2 Cal. Code Regs. § 7291.9 (c) (1).  If an employee returning

17  from a pregnancy disability leave cannot be reinstated in the same position, an employee

18  generally has a right to be reinstated in an available comparable position.  2 Cal. Code.

19  Regs. § 7291.9 (c) (2).

20      The California Family Rights Act ("CFRA") provides for 12 workweeks of leave

21  in a 12-month "leave year" for the birth of an employee's child.  Government Code §

22  12945.2 (a), (c) (3).  An employee who has worked at least 1250 hours in the previous

23  twleve months is entitled to leave rights under CFRA.  Government Code § 12945.2(a).

24  An employee who is granted leave under the CFRA must be reinstated to the same or a

25  comparable position upon termination of the leave.  *Id.*  "Employment in the same or a

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

1   comparable position" means employment in a position that has the same or similar duties

2   and pay that can be performed at the same or similar geographic location as the position

3   held prior to the leave.  Government Code § 12945.2 (c) (4).  Just as under CFRA'S

4   federal counterpart, the Family Medical Leave Act, an employer is prohibited from

5   interfering with substantive rights or entitlements under the CFRA.

6       Moua began her pregnancy disability leave on Friday, March 13, 2009, when her

7   doctor put her on bed rest. [Exhibit 3 to Bayer Decl. (Moua Decl. in Support of Plaintiff's

8   MSJ on Leave Claims, Exhibit 1 (MM56))]. Under the law, she was eligible to be on

9   leave for 16 weeks - or, until July 3, 2009.  It is undisputed that Moua was qualified to

10  take a leave of absence under the CFRA, in that she (a) had worked at least 1250 hours

11  for IBM in the 12 months previous to the commencement of her leave and (b)

12  experienced the birth of her baby. [Exhibit 3 to Bayer Decl., (Moua Decl., ¶3)].  Moua

13  notified IBM that she intended to take a leave of absence under CFRA on or around

14  February 13, 2009, when she discussed with Iyer her maternity plans after seeing her

15  doctor.  [*Id*.]  Moua informed him that her doctor indicated, based on her previous

16  pregnancies, that she would probably be able to work until mid-March 2009.   She

17  confirmed the dates she planned to begin and end her leave on March 9, 2009, via email.

18  [*Id*.]  On March 13, 2009, however, her doctor placed her on disability leave after she

19  began experiencing early contractions (her due date was May 18, 2009).  She was

20  scheduled to return to work on August 10, 2009. [*Id.*, Exhibit 1 (MM56)].

21      At the conclusion of Moua's leaves, IBM was required to reinstate her to the same

22  or a comparable position.  2 Cal. Code Regs. § 7291.9 (c) (1); Government Code §

23  12945.2 (a).  Instead, she was laid off.  [*Id.,* Exhibit 2].  Assuming, *arguendo,* that

24  Moua's position was eliminated, IBM still had a legal obligation to place her into an

25

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 14

1   available comparable position within its vast organization, upon her return from leave.

2   IBM did not do so.

3       IBM introduces no evidence of the alleged dearth of comparable positions

4   available to Moua.  Defendants' failure to introduce evidence that no comparable position

5   existed raises an inference that it cannot do so.  In considering summary judgment, the

6   court is mandated draw all inferences in favor of the nonmoving party.  *DiAmore v. Am.*

7   *Honda Motor Co*., No. 3:01-CV-961 (EBB) MBS, (2002 D.C. Conn) 2002 U.S. Dist

8   LEXIS 25770.  Additionally, this lack of evidence prevents IBM from establishing that

9   no disputes of material fact exist.  Plaintiff's burden to establish that Defendants are not

10  entitled to judgment as a matter of law simply has not been triggered.

11      Instead of identifying comparable positions for Moua, IBM foisted its legal

12  responsibility on to her, requesting that she return to work over a month before her leave

13  ended to look for another job that did not exist.  Iyer told Moua that it would be easier for

14  her to find a job if she came back at the end of June rather than waiting until August, but

15  confirms he knew of no openings when he made this representation. [Exhibit 1 to Bayer

16  Dec. (Iyer Depo. 71:24-73:10)].  This constitutes interference of her leave rights.

17      The issue is not whether Defendant required her to return from leave early or

18  required her to perform work –it is whether Moua's scheduled leave was interrupted

19  because she conducted an internal job search at IBM's behest, when IBM was under a

20  legal duty to find her a replacement position.  Because IBM cannot contradict that these

21  events occurred, summary judgment should be denied.

22  **C. Defendant Wrongfully Terminated Plaintiff in Violation of Public Policy**

23      The undisputed evidence establishes that Plaintiff's termination was the result of

24  illegal discrimination (see Section A, *infr*a).  Discrimination violates the public policy

25  articulated in FEHA and CFRA.  For a policy  to support a wrongful discharge claim, it

must (1) be delineated in constitutional or statutory provisions, (2) inure to the benefit of the public at large, (3) be well established at the time of the discharge, and (4) be fundamental and substantial.  *Stevenson v Superior Court*, (1997) 16 Cal. 4th 880.  The prohibition against discrimination in FEHA has been held to be a fundamental and substantial as a matter of law.  *Stevenson v. Superior Court*, supra, 16 Cal. 4th at 892, citing *Rojo v. Kliger*, (1990) 52 Cal. 3d 65.  An employee may state a claim under California law for wrongful termination in violation of the public policy within the CFRA. *Faust v. California Portland Cement, Co.* (2007) 150 Cal.App.4th 864, 886. Termination in violation of public policy constitutes a tort action.  *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal. 3d 167.  The evidence demonstrates that Defendants actions were motivated by a discriminatory animus, in violation of public policy.

### D.  Unfair Business Practices

Plaintiff's allegations that Defendants engaged in unfair business practices is predicated on the underlying statutory claims alleged in her SAC.  As a preliminary matter, Defendants did not move to dismiss Plaintiff's claim of unfair business practices with regards to her non-PAGA Labor Code claims.  See Motion at 18:24-26.  ("Plaintiff's Count Fifteen for violation of California's unfair competition law, Bus. & Prof. Code § 17200 fails because it is derivative of her discrimination, retaliation, and protected leave interference claims.")  Plaintiff alleged that her fifteenth cause of action was predicated in part on violations of the Labor Code at ¶¶ 140 and 141 of her SAC. [Docket No. 66 (SAC)].

Because they have not moved to dismiss all of the predicate claims, Defendants are not entitled to judgment as a matter of law for Plaintiff's Business & Professions Code § 17200 claim.  Summary judgment should be denied on this basis alone.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

In addition, the undisputed material facts that demonstrate Defendants IBM and Iyer were motivated by discriminatory animus when they selected Moua for layoff that is set forth above is hereby incorporated to oppose summary judgment of this claim. Defendants' motion for summary judgment of Plaintiff's unfair business practices should be denied.

**E.  Plaintiff's PAGA Claim is Not Subject to Summary Judgment**

**1.  PAGA Allows Plaintiff to Capture Waiting Time Penalties on Behalf of Herself and All Current and Former Employees**

Defendants' motion to dismiss Plaintiff's PAGA claim for civil penalties for their repeated violations of Labor Code § 201[3] fails because PAGA authorizes her to recover these penalties.  Plaintiff seeks penalties under PAGA for Defendants' violation of § 201 (failure to pay all wages owed at the time of termination).  [Docket No. 66 (SAC, ¶ 73 (a) and (b))].  § 203 provides 30 days' wages ("waiting time penalties") for violations of § 201.  Labor Code § 256 establishes: "The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time *under the terms of Section 203."*  (Emphasis added.)  Plaintiff seeks the civil penalty provided by § 256 through her PAGA claim on behalf of herself and the aggrieved employees she represents.  Defendants' motion to dismiss her claim for such penalties under PAGA should be denied.

**2.  PAGA Authorizes Plaintiff to Recover Labor Code § 226 (e) Penalties**

Section 226(e) provides for penalties for failure to abide by 226, subdivision (a).

---

[3] All statutory references are to the Labor Code unless otherwise noted.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 17 -

Civil penalties for Defendants' violations of § 226(a) are available under PAGA.  *See* § 2699.5 (listing § 226(a) among the statutes for which an aggrieved employee may recover civil penalties).  Because § 226(a) does not provide for civil penalties, PAGA's § 2699 (f) controls.  It states:

> (1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500).
> (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

Plaintiff's SAC alleges Defendants failed to provide itemized wage statements containing the hours the named aggrieved employees worked, and their hourly rate(s) corresponding to these hours.  [Docket No. 66, (SAC, ¶¶ 32-40)].  .Defendants' payroll records confirm their failure.[4]  Plaintiff's SAC places Defendants on notice that she seeks to recover penalties for these violations.  As such, Defendants' motion to dismiss Plaintiff's PAGA claim for penalties resulting from violations of § 226(a) should be denied.

---

[4] *See*, for example, Exhibit 4 to Bayer Declaration (IBMMOUA176139-176140 (Wage statement for R. Prathipati), 176323-176324 (Wage statement for Patricia Ann Marcus), 176506-176507 (Wage statement for J. Fabia), 176697-176698 (Wage statement from M. Samaie) 176793-176794 (Wage statement for M. Moua) 176805-176806 (Wage statement for T. Nguyen), 176924-176925 (Wage statement for A. Polini), 177033-177034 (Wage statement for M. Rizwan), 177194-177195 (Wage statement for R. Erdem), 177216-177217 (Wage statement for V. Peduru), 177390-177391 (Wage statement for J.Yoshii), 177578-177579 (Wage statement for C. Larosa), 177738-177739 (Wage statement for Cheuk Lui), 177943-177944 (Wage statement for G. Rana), 178133-178134 (Wage statement for S. Jayaraman), 178328-178329 (Wage statement for A. Murthy), 178526 (Wage statement for M. Kancherla), 178719-178720 (Wage statement for P.Yeung), 178910-178911 (Wage statement for R. Bellala), 179101-179102 (Wage statement for A. Aquino) and 179617-179618 (Wage statement for R.Moore).

### 3.  PAGA Authorizes Plaintiff to Recover Penalties Under § 2699 (f)

Labor Code §2699 provides two categories of penalties for violations of the Labor Code.  Subdivision (a) allows an aggrieved employee to recover a "civil penalty" provided for by any provision of the Labor Code through a civil action.  Subdivision (f) establishes a civil penalty for a violation of those Labor Code provisions for which no civil penalty is specifically provided.[5]

Plaintiff's prayer seeks "civil penalties under Labor Code §§ 2698 *et seq.* and all other applicable statutes or provisions of law," which encompasses penalties authorized by Labor Code § 2699 (f).

Plaintiff's SAC identifies the PAGA penalty provisions of subdivision (f) and listed the sixteen Labor Code provisions which she alleged Defendants violated, many of which did not carry their own penalty provisions.  [Docket No. 66, (SAC, ¶¶ 70 and 73)].  For example, Plaintiff seek penalties for Defendants' violation of § 1198, which itself prohibits violations of the Industrial Welfare Commission Wage Order No. 4-2001. (¶73, subsection (p)).  It naturally follows that Plaintiff seeks civil penalties under § 2699 (f) with regard to these Labor Code sections.

Plaintiff's SAC provides fair notice of the relief she seeks under PAGA, as it must. That a statute was incorrectly alleged does not affect Plaintiff's PAGA claim.  The "theory of the pleadings" doctrine (under which a plaintiff must succeed on theories

---

[5] Labor Code § 2699, subdivision (f) establishes a civil penalty as follows:

(1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500).

(2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

1   pleaded in the complaint, or not at all) has been abolished by the Federal Rules.  As long

2   as the other side receives fair notice of the nature of the claim, the complaint need not

3   allege the legal theory on which recovery is being sought.  *Crull v. GEM Ins. Co*. (9th

4   Cir. 1995) 58 F3d 1386, 1391; *Albert v. Carovano* 851 F2d 561, 571, fn.3 (2nd Cir. 1988)

5   – complaint's failure to cite correct statute does not affect merits of a claim (factual

6   allegations are what matters).  Plaintiff's complaint provided Defendants fair notice that

7   she was seeking penalties for violations of Labor Code sections that did not carry their

8   own penalty provisions.[6] As such, Defendants had fair notice that Plaintiff seeks penalties

9   under § 2699 (f).

10          Finally, Defendants' argument that Plaintiff cannot obtain subsection (f) penalties

11   for Labor Code sections that carry their own penalties is nonsensical.  Plaintiff seeks

12   subsection (a) penalties for violations of Labor Code sections that carry their own

13   penalties and subsection (f) penalties for violations of Labor Code sections that do not.

14   Should this Court finds that the allegations are unclear, Plaintiff can rectify the issue by

15   amending her SAC.  Plaintiff will request leave of court to do so, in the furtherance of

16   justice. Each of Defendants' stated grounds for summary judgment of Plaintiff's § 2699

17   (f) penalties fails.  Defendants' motion for dismissal should be denied.

18

19

20

---

21   [6] *Villacres v. ABM Industries Inc*. (2010) 189 Cal.App.4th 562 does not compel a
     different result.  *Villacres* observed at page 580, "Under the PAGA, the civil penalty for

22   an initial violation is $ 100 per employee per pay period, and the penalty for each
     subsequent violation is $ 200 per employee per pay period. Thus, a plaintiff in a PAGA

23   suit must identify the civil penalties available under the PAGA's default provision *as
     opposed to the civil penalties authorized by the underlying Labor Code provision*."

24   (Emphasis added.) Here, Plaintiff explicitly identified the civil penalties available under
     PAGA's default provision at ¶ 70 of her SAC, as opposed to the civil penalties authorized

25   by the underlying Labor Code provision, as required.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

### 4.  Plaintiff is Authorized to Recover Penalties Under §§ 558 and 2699 (f) Simultaneously

The law explicitly states that civil penalties under section 558 are cumulative to "any other civil penalty" provided by law.  See Labor Code § 558 (c) ("The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.")  Defendants' frivolous argument ignores the plain language of the statute; their motion to dismiss should be denied.

### 5.  PAGA Authorizes Plaintiff to Recover Penalties for Violations of §§ 3(A) and 7 of Industrial Welfare Commission Wage Order 4-2001

IWC Wage Order 4-2001 Section 3(A), regulating overtime, mandates that "employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible, provided the employee is compensated for such overtime at not less than: (a) one and one-half (1 ½) times the employee's regular rate of pay, for all hours worked in excess of eight (8) hours up to and including 12 hours in any work day, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek."

Federal rules of pleading requires only that Plaintiff give Defendants notice of the claims.  Plaintiff specifically alleged that Defendants violated IWC Wage Order 4-2001 with regards to their failure to pay overtime.  [See Docket No. 66 (SAC) ¶ 27].  Plaintiff's SAC is replete with allegations that Plaintiff and the PAGA members worked overtime for which they were not compensated in accordance with state law.  (*Id*. at ¶¶ 1, 13 -16, 24-31, 59, 73 (d) and (k), and Exhibits 1 and 3).  IWC Wage Order 4-2001 Section 7,

regulating recordkeeping, mandates that every employer "shall keep accurate information with respect to each employee including…(3) Time records showing when the employee begins and ends each work period.  Meal periods, split shift intervals and total daily hours worked shall also be recorded..."  Plaintiff's SAC explicitly alleged that Defendants violated IWC Wage Order 4-2001 subsection 7 at ¶¶ 43 and 44.  Plaintiff's SAC contains multiple additional allegations of Defendants' failure to keep accurate records pertaining to both her and the PAGA members. [*Id.* at ¶¶ 33, 35, 37, 41-48, 73 (n), and Exhibits 1 and 3]. Defendants' motion to dismiss her PAGA claim for penalties resulting from violations of IWC Wage Order 4-2001 §§ 3(A) and 7 should be denied.

### 6.  § 210 Authorizes Plaintiff to Seek Heightened Penalties for Defendants' Willful or Intentional Violations of the Labor Code

Plaintiff may recover heightened penalties for Defendants' failure to timely pay the aggrieved employees pursuant to the requirements of § 204 because their violations were willful and/or intentional.  § 210 provides for penalties as follows:

> (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.  (2) For each subsequent violation, **or any willful or intentional violation**, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

(Emphasis added.)

Plaintiff alleged that IBM's Labor Code violations were willful, given its history of getting sued for failing to pay its employees correctly:

> "IBM failed to comply with California laws by taking the following actions: ….knowingly committing these [aforementioned] violations, because IBM has been sued previously for failing to properly classify its employees and to pay them in accordance with California law and has been made aware of its responsibilities under the law; intentionally committing

1

2

> these violations, because IBM has been sued previously for failing to properly classify its employees and to pay them in accordance with California law and has been made cognizant of its responsibilities under the law."

3

[Docket No. 66, (SAC, Exhibit 3)].

4

5

Defendants have also introduced no evidence to show that Plaintiff cannot establish their

willful and intentional conduct, as they must for summary judgment to be granted.

6

7

### 7.   Defendants are Liable for Heightened Penalties Under § 2699 (f)

8

9

In 2003, the California Legislature took action to address the state's inability to

enforce its own labor laws. It found and declared:

10

11

12

13

> "Although innovative labor law education programs and self-policing efforts by industry watchdog groups may have some success in educating some employers about their obligations under state labor laws, in other cases **the only meaningful deterrent to unlawful conduct is the vigorous assessment and collection of civil penalties as provided in the Labor Code**.

14

15

16

> Staffing levels for the **state labor law enforcement agencies** have, in general, declined over the last decade and **are likely to fail to keep up with the growth of the labor market in the future**.

17

18

19

20

> It is therefore in the public interest to provide that **civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general,** while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act."

21

§ 2698, subds. (b) through (d).  (Emphasis added.)

22

The holding in *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157 undermines

23

the legislature's stated purpose of PAGA, and should therefore be disregarded. *Amaral*

24

held that heightened penalties under § 2699(f) are not available "[u]ntil the employer has

25

been notified that it is violating a Labor Code provision (whether or not the commissioner

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

1    or court chooses to impose penalties)."  This interpretation contradicts the "liberal

2    construction" required to be given to remedial statutes like the Labor Code (*Industrial*

3    *Welfare Com. v. Superior Court* (1980) 27 Cal. 3d 690, 702), and wastes judicial

4    resources by fostering duplicative litigation.  It also rewards Defendants, like IBM, who

5    are repeatedly sued for violating their employees' rights to wages[7] but who broker

6    settlements before liability is adjudicated.[8]  While the DLSE memo upon which the

7    *Amaral* court based its decision may have made for sound administrative policy in 1984,

8    it does not translate to sound public policy in 2013.  The holdings of this appellate

9    decision should not be adopted.

10

11                    **8.  Defendants are Liable for Heightened Penalties for Their
                            Violations of § 558**

12          Plaintiff is entitled to purse Defendants for the heightened penalties provided by §

13   558 for the same reasons as she is entitled to pursue heightened penalties under § 2699

14   (f), as articulated, *infra,* in Section III (B) (7).  Any interpretation of § 558 that allowed

15   Defendants to escape heightened penalties for violating the PAGA members' wage and

16   hour rights since 2008 would not comport with the liberal interpretation required of

17   remedial statutes.  *Industrial Welfare Com. v. Superior Court, supra,* 27 Cal. 3d at 720.

18   Summary judgment should be denied.

19   *//*

20   *//*

21

22   _____

23   [7] Exhibits 5 and 6 to Bayer Declaration (Notice of Proposed Settlement of Class Action
     Lawsuit and Fairness Hearing (*Rosenburg et al. v. International Business Machines

24   Corporation*) and Joint Stipulation of Settlement and Release of All Claims (*Danieli et
     al. v. International Business Machines Corporation*)).

25

     [8] The *Amaral* decision serves to discourage settlement for this same reason.
     OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
     *Moua et al. v. IBM et al.*

IV.    CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment as to Plaintiff's claims for gender discrimination under FEHA and the California Constitution, interference and retaliation for requesting and/or taking leave under the Pregnancy Disability Leave act and/or the California Family Rights Act and/or the Paid Family Leave Act, PAGA, wrongful termination in violation of public policy and unfair business practices be denied.

Defendants have not sustained their burden of establishing that there is no dispute of material fact as to any of Plaintiff's claims, nor have their demonstrated that they are entitled to judgment as a matter of law.

Respectfully Submitted;

Dated:  May 24, 2013                    Respectfully submitted,

                                        **BAYER & BORLASE**


                                        /s/Heather E. Borlase
                                        Heather E. Borlase
                                        Attorneys for Plaintiff and PAGA members

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RELATED TO MAY MOUA
*Moua et al. v. IBM et al.*

- 25 -