UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAY MOUA,<br><br>   Plaintiff,<br><br> v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, et al.,<br><br>   Defendants. | Case No. 5:10-cv-01070-EJD<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO PAGA EMPLOYEES**<br><br>Re: Dkt. Nos. 101, 102, 103, 109, 110, 122, 123, 124, 126, 127, 128, 130, 131, 133, 134, 135 |

## I. INTRODUCTION

Plaintiff May Moua brings this employment action against Defendants International Business Machines Corporation, Joseph Koenig and Venkatasubramiam Iyer (collectively, "IBM") for several violations of the California Labor Code. In one of her causes of action, Moua asserts the Private Attorneys General Act ("PAGA"), California Labor Code § 2699, on behalf of a list of other "aggrieved employees" at IBM, who are otherwise known in this order as the "PAGA employees."

Presently before the court are 15 separate motions for summary judgment filed by IBM, each one addressing an individual PAGA employee. Plaintiff separately opposes the motions. As will be explained, IBM is entitled to summary judgment for most, but not all, of the PAGA employees.

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

## III. DISCUSSION

### A. PAGA

A PAGA representative action is a type of qui tam action. Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, (2014). Under PAGA, an "aggrieved employee" may bring a civil action against an employer "on behalf of himself or herself and other current or former employees." Cal. Lab.Code § 2699(a). "[A]ny provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee." Id. PAGA also provides for the recovery of a civil penalty for any Labor Code provisions that do not themselves have an associated civil penalty. Cal. Lab. Code § 2699(f). "The civil penalties recovered on behalf of the state under . . . PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." Iskanian, 59 Cal. 4th at 381.

If the employee is successful, 75 percent of the penalties recovered go to the Labor and Workforce Development Agency, and the remaining 25 percent go to the aggrieved employees. Cal. Lab. Code § 2699(i).

A representative plaintiff proceeding under PAGA must "prove Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA." Hibbs-Rines v. Seagate Techs., LLC, No. C 08-05430 SI, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009)

### B. Moua's PAGA Cause of Action

According to the Second Amended Complaint, Moua's PAGA cause of action is based on the following:

- Failure to pay earned and unpaid wages at the time of discharge, in violation of Labor Code § 201;
- Willful failure to pay discharged employees, in violation of Labor Code § 203;
- Failure to pay timely wages in violation of Labor Code § 204;
- Failure to provide compensating time off in lieu of overtime compensation in

3

Case No.: 5:10-cv-01070-EJD
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO PAGA EMPLOYEES

violation of Labor Code § 204.3;

- Labor Code § 210, which designates a civil penalty for violation of Labor Code § 204;
- Failure to provide itemized wages statements, in violation of Labor Code § 226(a);
- Labor Code § 226(e), which designates a statutory penalty for violation of Labor Code § 226;
- Labor Code § 226.3, which designates a civil penalty for violation of Labor Code § 226;
- Labor Code § 226.6, which designates a knowing and intentional violation of Labor Code § 226 a misdemeanor punishable by a fine not exceeding $1,000 or a term of imprisonment not exceeding one year;
- Failure to provide meal and rest breaks, in violation of Labor Code § 226.7;
- Failure to pay overtime wages, in violation of Labor Code § 510;
- Failure to pay premium wages for failing to provide meal and rest breaks, in violation of Labor Code § 512;
- Labor Code § 558, which designates a civil penalty for violation of Labor Code §§ 510 and 512;
- Failure to maintain records, in violation of Labor Code § 1174;
- Labor Code § 1174.5, which designates a civil penalty for violation of Labor Code § 1174;
- Failure to comply with the maximum hours of work, in violation of Labor Code § 1198; and
- Failure to provide meal and rest periods in violation of Wage Order No. 4-2001, subds. 11, 12.

### C. Labor Code Exemptions

Three statutory exemptions to the protections of the Labor Code are relevant to these motions. As a general matter, these provisions are narrowly construed. <u>Ramirez v. Yosemite</u>

4

Case No.: 5:10-cv-01070-EJD
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO PAGA EMPLOYEES

Water Co., Inc., 20 Cal. 4th 785, 794 (1999) ("Ramirez").

### i. Administrative Exemption

Labor Code § 515(a) "exempts from overtime compensation 'executive, administrative, and professional employees' whose primary duties 'meet the test of exemption,' who 'regularly exercise[] discretion and independent judgment in performing those duties' and who earn a monthly salary at least twice the state minimum wage for full-time employees." Harris v. Super. Ct., 53 Cal. 4th 170, 178 (2011). Consequently, to be considered "administrative" an employee must: "(1) be paid at a certain level, (2) their work must be administrative, (3) their primary duties must involve that administrative work, and (4) they must discharge those primary duties by regularly exercising independent judgment and discretion." Id.

Under the second element:

> [W]ork qualifies as 'administrative' when it is 'directly related' to management policies or general business operations. Work qualifies as 'directly related' if it satisfies two components. First, it must be qualitatively administrative. Second, quantitatively, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered 'directly related' to management policies or general business operations in order to meet the test of the exemption.

Id. at 181-82.

### ii. Computer Professional Exemption

Labor Code § 515.5(a) exempts from overtime pay "an employee in the computer software field." According to the applicable wage order, an employee is considered to work in the "computer software field" if: (1) the employee is "primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment;" (2) the employee is primarily engaged in statutorily-defined duties related to computer system specifications; (3) the employee is "highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming or software engineering," regardless of job title; and (4) the employee has an annual salary of at least $75,000 or an hourly rate of pay of at least $36.00. Wage Order No. 4-2001, subd. 1(A)(3)(h).

### iii. Outside Salesperson Exemption

Labor Code § 1171 specifies that the wage, hour and working conditions provisions of California law apply to all individuals "employed in any occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise, but shall not include any individual employed as an outside salesman . . . ." "An '[o]utside salesperson' is one who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Duran v. U.S. Bank Nat'l Ass'n, 59 Cal. 4th 1, 26 (2014) (quoting Wage Order No. 4-2001, subd. 2(M)).

Determining whether an employee is covered by the outside salesperson exemption requires inquiry into the "realistic" requirements of the job. Ramirez, 20 Cal. 4th 785, 802 (1999). The court must examine "first and foremost, how the employee actually spends his or her time." Id. But the court "should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." Id.

### D. Application

IBM argues there is no dispute of material fact that the PAGA employees are exempt employees according to one of the statutory exceptions detailed above.[1] To prevail on that argument, IBM must produce sufficient evidence to show that each PAGA employee is covered by a recognized exemption. See Duran, 59 Cal. 4th at 26 (holding that the employer bears the burden of proving an exemption under the Labor Code). But since Plaintiff would bear the burden of proof at trial to show a violation of the Labor Code, she must "designate specific materials in the record to show that there is a genuinely disputed fact" in response to IBM's that proof of any violation is absent. See Celotex Corp., 477 U.S. at 324.

---

[1] The court rejects Moua's notice challenge because IBM's Answer provided fair notice it would raise exemptions as an affirmative defense to her claims.

In consideration of the authorities stated above, the court rules as follows on separate motions for summary judgment:

### i. Mariam Samie (Dkt. No. 101)

Mariam Samie worked in sales of an IBM software product known as Optim. Considering the duties Samie actually performed and the amount of time she spent away from her employer's business conducting those duties, IBM has satisfied its burden to show, with admissible evidence, that Samie is subject to the outside salesperson exemption.

The court rejects Moua's argument that Samie was instead a technical resource and not engaged in "selling" IBM's product. Moua proposes a definition of the word "selling" that is too restrictive to be accepted here because the applicable wage order, No. 4-2001, does not define "selling," and "selling" can equally encompass conduct meant "to influence or induce to make a purchase." Merriam-Webster's Collegiate Dictionary 1129 (11th ed. 2003). In addition, Samie unequivocally testified that her efforts were, in fact, directed at securing product sales. Samie's declaration submitted in opposition to the motion does not dispute any facts material to an application of the exemption.

The court also finds Moua's reliance on Ramirez misplaced. Though the California Supreme Court recognized that state law differs from federal law "in that it does not contain any provision that reclassifies intrinsically nonexempt nonsales work as exempt based on the fact that it is incidental to sales," there is no evidence that Samie engaged in "nonexempt nonsales work" under the court's interpretation of what constitutes "selling."

Because Moua did not submit sufficient counter-evidence to demonstrate a dispute of material fact with respect to the application of the outside salesperson exemption to Samie, no reasonable jury could find in her favor. IBM's motion for summary judgment will be granted.

### ii. Patricia Ann Marcus (Dkt. No. 102)

Patricia Ann Marcus is an Opportunity Manager who generally advises customers as to their training and educational needs related to software products. IBM argues Marcus satisfies the administrative exemption and has produced sufficient evidence on the application of that

7

exemption to satisfy its initial burden on summary judgment. To that end, there is no dispute that Marcus' salary qualifies under the exemption's first element.

Under the second element, Marcus' work is qualitatively "administrative," in that it is directly related to management policies or general business operations. Notably, work falling under this definition is not limited to participation in formulating management policies or in the operation of the business as a whole, and may include "advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others." 29 C.F.R. § 541.205(c); see also Harris, 53 Cal. 4th at 181 (observing that 29 C.F.R. § 205 "is one of the regulations incorporated in Wage Order 4-2001). And "regardless of whether the management policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer." 29 C.F.R. § 541.205(d). Marcus' position is particularly comparable to that of an account executive supporting the management policies of IBM's customers. Moua's argument that Marcus is primarily engaged in sales overlooks the details of Marcus' testimony about her job duties and is unpersuasive.

As to the third element, there is no dispute that Marcus' primary duties involved work that can be classified as qualitatively administrative.

For the fourth element, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). This element also "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision with respect to matters of significance." Id. The element is satisfied, for example, by a systems analyst "who develops methods to process . . . accounting, inventory, sales and other business information by using electronic computers," and who "determines the exact nature of the data processing problem, and structures the problem in a logical manner so that a system to solve the problem and obtain the desired results can be

developed." 29 C.F.R. § 541.207(c)(7). Marcus' role in training support is closely akin to that of the systems analyst who working independently within minimal managerial oversight.

Moua did not submit sufficient counter-evidence to demonstrate a dispute of material fact with respect to the application of the administrative exemption to Marcus. IBM's motion for summary judgment will therefore be granted.

### iii. Madhuri Kancherla (Dkt. No. 103)

Madhuri Kancherla is a Service Delivery Manager supporting PeopleSoft systems for IBM customers. PeopleSoft is an application that business use to run processes such as payroll and benefits, and Kancherla recommends improvements to customers, plans maintenance and improvement projects and resolves problems. Like Marcus, IBM argues Kancherla satisfies the administrative exemption and has produced sufficient evidence of its application to satisfy the initial summary judgment burden. Moreover, since Kancherla's job duties are similar to that Marcus in many respects, the analysis of the administrative exemption is largely the same.

There is no dispute that Kancherla's salary qualifies under the exemption's first element. For the second and third elements, Kancherla testified she spends 45% of her time making proactive efforts to recommend systems improvements for IBM's customers, which is indisputably administrative work. Kancherla also testified she spends 30% of her time planning complex maintenance projects, which the court finds satisfies the definition of work directly related to management policies or general business operations in light of Kancherla's description of these duties. See 29 C.F.R § 541.205(a) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."); see also 29 C.F.R. § 541.205(c)(7) (describing as exempt employees "concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of his employer or his employer's customers"); see also 28 C.F.R. § 541.205(d). Kancherla, therefore, satisfies the qualitative and quantitative

requirements for administrative work. Moua's contention that Kancherla is actually involved in production work does not account for all of the aspects of Kancherla's job.

On the fourth element, Kancherla's testimony reveals that, while the universe of choices she may utilize in response to work ticket or in creating a customer patch is limited by the resources available to her, she nonetheless exercises significant independent discretion and judgment when creating a unique solution from that universe of resources. In that way, Kancherla's job duties are distinct from an employee "who merely applies his knowledge following prescribed procedures or determining which procedure to follow" (29 U.S.C. § 541.206(c)(1)), such as the employee described in the out-of-circuit district court opinion cited by Moua (Hunter v. Sprint Corp., 453 F. Supp. 2d 44 (D.D.C. 2006)).

As with Marcus, IBM is entitled to summary judgment as to Kancherla because Moua did not submit sufficient counter-evidence to demonstrate a dispute of material fact with respect to the application of the administrative exemption.

### iv. James Fabia, Thach Nguyen, Vijay Peduru and Mohammad Rizwan (Dkt. Nos. 109, 123, 126, 133)

James Fabia and Mohammad Rizwan are PeopleSoft administrators. Thach Nguyen and Vijay Peduru are also members of the PeopleSoft team at IBM. In relevant part, the record shows that these employees' job duties correspond in many ways to those of Kancherla. Therefore, the court adopts the same analysis and finds that Fabia, Nguyen and Rizwan are subject to the administrative exemption despite Moua's arguments to the contrary. Because there is no dispute of material fact, no jury could find in Moua's favor. IBM's summary judgment motions as to Fabia, Nguyen, Peduru and Rizwan will be granted.

### v. Bryan Barker (Dkt. No. 110)

Bryan Barker was employed at IBM as a delivery project executive. In this position, Barker was responsible for ensuring that IBM met its contractual commitments, testifying that he "manage[d] everything once the contract was signed." He spent 50% to 80% of his time resolving PeopleSoft outages for IBM customers, and would ensure there was a plan to remedy the problem.

Barker testified he spent 20% of time on analyzing recurrent problems and recommending system improvements. He also represented IBM during customer interactions. IBM argues Barker satisfies the administrative exemption and has produced sufficient evidence of its application to satisfy the initial summary judgment burden.

There is no dispute that Barker's salary qualifies under the exemption's first element. On the second and third elements, Barker's job duties were "administrative" since they satisfy both the quantitative and the qualitative requirements no matter how Moua parses the particular tasks. See 29 C.F.R § 541.205(a); see also 29 C.F.R. § 541.205(c)(7); see also 28 C.F.R. § 541.205(d). That parsing does not create a genuine dispute of material fact.

For the fourth element, the record shows that Barker exercised discretion and independent judgment in a manner that satisfies the definition provided by 29 C.F.R. § 541.207(a). Much like Marcus, Barker's job duties track those of the systems analyst example described in the regulation. See 29 C.F.R. § 541.207(c)(7).

IBM is entitled to summary judgment as to Barker because Moua did not submit sufficient counter-evidence to demonstrate a dispute of material fact.

### vi. Aravind Murthy (Dkt. No. 122)

Aravind Murthy has worked at IBM since 2005, first as a database administrator until the first quarter of 2009, and then as a service delivery manager. Generally, Murthy ensures the functionality of Oracle systems for IBM clients. In the manager role, Murthy spends 40% of his time analyzing customer systems and recommending changes, 25% of his time designing systems modifications, 15% of his time on business research and 20% of his time coordinating overseas teams. As an administrator, Murthy spent 40% of his time on systems analysis, 25% of this time preparing and delivering recommendations to client systems, and 30% of his time executing changes, attending internal meetings and resolving system problems. IBM argues that Murthy satisfies the administrative exemption and the computer professional exemption and has produced sufficient evidence of its application to satisfy the initial summary judgment.

There is no dispute that Murthy's salary qualifies under the exemption's first element. On

1 the second and third elements, Murthy's job duties in both positions were "administrative" since they satisfy both the quantitative and the qualitative requirements. See 29 C.F.R § 541.205(a); see also 29 C.F.R. § 541.205(c)(7); see also 28 C.F.R. § 541.205(d). For the fourth element, the record shows that Murthy exercised discretion and independent judgment in a manner that satisfies the definition provided by 29 C.F.R. § 541.207(a). Moua has not successfully demonstrated a material dispute of fact for any of the exemption's elements. IBM is entitled to summary judgment as to Murthy.

### vii. Rickey Moore and Sendhil Jayaraman (Dkt. Nos. 124, 134)

Rickey Moore and Sendhil Jayaraman are database administrators. Moore managed PeopleSoft databases for IBM clients, and spent 50% of his time improving the speed and efficiency of database functions. Moore also spent 20% of his time on database disaster recovery. Similarly, Sendhil Jayaraman spent the majority of his time coordinating and performing work to manage, maintain, and improve Oracle systems for IBM customers.

IBM argues that both Moore and Jayaraman are subject to the administrative exemption. However, Moua has successfully shown that application of the exemption presents materially disputed facts that preclude summary judgment to IBM. Importantly, the record does not show that either Moore or Jayaraman directly engaged with IBM's customers, in notable contrast to the other employees discussed in this order. Instead, Moore and Jayaraman manage customer databases internally. Thus, it cannot be determined as a matter of fact on this record that Moore and Jayaraman spend the majority of their time with the "planning, scheduling and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems" of their employer or their employer's customers. 29 C.F.R. § 541.205(c)(7). Furthermore, a reasonable jury could analogize the work of Moore and Jayaraman to that of a non-exempt clerical employee, even though they exercise some measure of discretion or judgment as to the matter in which they perform their tasks. 29 C.F.R. § 541.205(c)(2). As such, whether Moore and Jayaraman are engaged in work that is either qualitatively or quantitatively administrative is a triable issue of fact. The issue of whether Moore

1   and Jayaraman exercise the requisite degree of discretion and independent judgment for the fourth
2   element of the exemption is also a topic on which there exists a material dispute of fact.
3      However, IBM is correct that claims under Labor Code §§ 201, 202 and 203 cannot be
4   asserted as a matter of law as to Jayaraman because he is a current employee. Thus, IBM's motion
5   addressing Moore will be denied. The motion addressing Jayaraman will be granted in part and
6   denied in part.

### viii. Reddiah Prathipati (Dkt. No. 127)

Reddiah Prathipati has worked as a Siebel team lead since 2008. Siebel is a system used by corporations to track and analyze information regarding sales and marketing activities, customers and customer purchases, and communications with clients. Prathipati leads a teach of U.S.-based and India-based systems administrators, acts as a liaison between IBM and customers, evaluates team members, manage responses to service disruptions, serves as the compliance head for IBM's Oracle line of business, and develops system architectures for prospective clients.

IBM has produced sufficient evidence to demonstrate that Prathipati satisfies the administrative exemption. There is no dispute that his salary satisfies the first element. The record also supports a finding that Prathipati's job duties are qualitatively and quantitatively administrative. See 29 C.F.R § 541.205(a); see also 29 C.F.R. § 541.205(c)(7); see also 28 C.F.R. § 541.205(d). Moua's argument to the contrary, which is notably short on citations to evidence in the record, does not persuade the court that a jury could find in her favor on these issues. Therefore, there is no dispute of material fact on the second and third elements of the administrative exemption.

There is also no genuine dispute of material fact as to the fourth element because Prathipati plainly exercises a significant degree of discretion and independent judgment in his position. Though Moua argues otherwise, the evidence cited in support of her argument does not show this element is materially disputed. IBM's motion will be granted as to Prathipati.

### ix. Deepak Sharma (Dkt. No. 128)

Deepak Sharma is an IT Consultant to IBM's customers and has a mix of job duties

13
Case No.: 5:10-cv-01070-EJD
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO PAGA EMPLOYEES

1   ranging from engagement manager, in which he acts as the single point of interface between IBM
2   and a client, to project manager, in which he leads teams and manages the technical aspects of a
3   project for a client, to IT architect.

Of the other employees examined in this order, Sharma's job duties most closely resemble those of Prathipati in several aspects. And like Prathipati, IBM has produced sufficient evidence to demonstrate that Sharma satisfies the administrative exemption. There is no dispute that his salary satisfies the first element. The record also supports a finding that Sharma's job duties are qualitatively and quantitatively administrative. There is also no genuine dispute of material fact as to the fourth element because Sharma exercises discretion and independent judgment in his position. IBM's motion will be granted as to Sharma.

### x. Alan J. Polini (Dkt. No. 130)

Alan J. Polini was a SAP Systems Analyst for the time period relevant to this action. He primarily worked on projects to customize SAP to meet the needs of IBM's customers. He would meet the customer to gather information and determine specifications, would create a recommendation, wrote scripts to automate processes, and performed tests.

IBM argues there is no dispute of material fact that Polini is subject to the computer professional exemption. The court agrees. The record shows that Polini's work in creating customized SAP processes for IBM's customers, choosing from an array of different functionalities and other possible options, shows that he was primarily engaged in creative work related to computer system specifications. Also, no reasonable jury could find that Polini is not highly skilled and proficient in computer systems analysis and programming. In addition, there is no dispute that Polini's salary meets the requisite standard.

Because Plaintiff did not produce adequate evidence to show a materially disputed fact on application of the computer processional exemption to Polini, IBM's motion for summary judgment will be granted.

### xi. Gaurav Rana (Dkt. No. 131)

Gaurav Rana worked as an Opportunity Manager between December, 2007, and August,

2010. Importantly, however, Rana testified that he did not work overtime hours in this position and was not denied meal and rest breaks. The e-mails produced by Moua, which she claim show that Rana worked overtime hours, do not create a material dispute of fact because they do not reveal anything more than Rana sent an email at one particular time on one particular day. Even drawing all inferences in Moua's favor, the e-mails are simply not substantial enough to overcome Rana's testimony. For this position, what remains is any claim under Labor Code §§ 1174 and 1174.5, on which the court cannot grant summary judgment in light of the record.

Rana now works as a Program Manager. In that position, he manages IBM's eLearning Portfolio, which provides training support programs to IBM's customers. There is no material dispute in the record that his work constitutes "servicing," as defined in 29 C.F.R. § 541.205(b). Nor is there any material dispute that Rana exercises significant discretion and independent judgment in the Program Manager position. Since Moua does not challenge the other elements of the administrative exemption, IBM's motion will be granted as to Rana's work as a Program Manager.

### xii. Christopher Larosa (Dkt. No. 135)

Christopher Larosa worked as an Accelerated Value Leader from December 1, 2008, through August 31, 2010. In that position, Larosa was responsible for managing and delivering the Lotus-branded services to IBM customers. He assessed customer needs, recommended upgrades, assessed the propriety of system changes, managed installations and upgrade projects, and made recommendations based on the unique needs to particular customers. Between September 1, 2010, and March 28, 2012, Larosa worked as a Services Sales Specialist, which related to contracts through which IBM provides technical support to customers. Similar to his prior position, Larosa assessed customer needs and developed tailored recommendations for the delivery of services.

IBM has produced sufficient evidence to demonstrate that Larosa satisfies the administrative exemption for both of his positions. There is no dispute that his salary satisfies the first element, and the record supports a finding that Larosa's job duties are qualitatively and

quantitatively administrative. See 29 C.F.R § 541.205(a); see also 29 C.F.R. § 541.205(c)(7); see also 28 C.F.R. § 541.205(d). The second and third elements are therefore satisfied.

As to the fourth element, the record shows that Larosa exercised discretion and independent judgment in both of his position by communicating with customers, understanding their needs, and creating unique solutions. In response to this evidence, Moua did not produce evidence to show that application of the administrative exemption to Larosa was subject to a material dispute of fact. IBM's motion will be granted as to Larosa.

## IV. ORDER

Based on the foregoing:

1. The motions for summary judgment at Dkt. Nos. 101, 102, 103, 109, 110, 122, 123, 126, 127, 128, 130, 133 and 135 are GRANTED;

2. The motions for summary judgment at Dkt. Nos. 131 and 134 are GRANTED IN PART and DENIED IN PART; and

3. The motion for summary judgment at Dkt. No. 124 is DENIED.

Additional pending motions will be addressed through separate order.

**IT IS SO ORDERED.**

Dated: September 29, 2017

EDWARD J. DAVILA
United States District Judge