UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAY MOUA,<br><br>Plaintiff,<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION, et al.,<br><br>Defendants. | Case No. 5:10-cv-01070-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS IN COUNTS 7-15**<br><br>Re: Dkt. No. 137 |

Defendants International Business Machines Corporation ("IBM"), Joseph Koenig ("Koenig"), and Venkatasubramaniam Iyer ("Iyer") move for partial summary judgment as to Plaintiff May Moua's ("Plaintiff") pregnancy discrimination claim and related claims. For the reasons set forth below, Defendants' motion will be denied.

I.   BACKGROUND

Plaintiff became an IBM employee in March of 2005 when her former employer, Corio, was acquired by IBM. Dkt. 136 at 2. Koenig was Plaintiff's first-line supervisor at the time of the acquisition and remained Plaintiff's supervisor until April of 2008 when Iyer became her supervisor. *Id*. In early November of 2008, Plaintiff informed Iyer that she was pregnant. Also in November of 2008, Iyer's supervisor, Sanje Kak ("Kak") informed Iyer that layoffs were coming and that Iyer would need to layoff two employees.

In the first quarter of 2009, IBM went through layoffs (sometimes called "Resource Actions") in many of its business units, including IBM's Management Services Delivery ("MSD") business. Kak, a second-line manager in MSD, was given a target number of employees who

would need to be laid off. IBM decided to lay off one of the three employees in the MDS functional/business process team because of the decreased demand for functional support. Iyer, with support from Kak and human resources, conducted an assessment that measured the skills and performance of the three employees in that team. Plaintiff ranked lowest in this assessment.

In February, Plaintiff's doctor placed Plaintiff on disability for one day because of early contractions. Plaintiff was on disability leave due to preterm labor at the time the Resource Action was announced. Plaintiff's maternity leave commenced on March 13, 2009 and her doctor provided a return to work date of June 30, 2009. Plaintiff requested and was granted an additional six weeks of leave under the California Family Rights Act ("CFRA"), and her return to work date was scheduled for August 10, 2009.

On June 15, 2009, Iyer notified Plaintiff that she had been selected for layoff. Iyer told Plaintiff that starting June 30, 2009 (the original return to work date), Plaintiff would be provided full pay for a 30-day period, during which time she could look for another position within IBM if she chose to do so. This paid 30-day job search allowance is offered to all employees selected for layoff.

On July 24, 2009 (while on leave), Plaintiff applied for a Test Specialist position in IBM's Managed Business Process Services ("MBPS") unit. This position was posted by Josie Holdaway ("Holdaway"). Holdaway did not have authority to hire or transfer anyone into the position; instead the position had to be filled by an existing IBM employee who could be temporarily loaned out to Holdaway's unit. Holdaway did not have authority to consider candidates who, like Plaintiff, had been selected for layoff.

Plaintiff initiated this suit in 2010 alleging, among other things, that IBM discriminated against her based on pregnancy in violation of the California Constitution, Article 1, § 8 (Eighth Cause of Action) and the California Government Code §§ 12900 et seq. (Ninth Cause of Action); that IBM interfered with her leave rights in violation of the CFRA (Eleventh Cause of Action) and the Pregnancy Disability Leave Law ("PDLL") (Thirteenth Cause of Action); that IBM retaliated against her for taking leave in violation of the CFRA (Twelfth Cause of Action) and the PDLL

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
2

(Fourteenth Cause of Action); and that the foregoing constituted wrongful termination in violation of public policy (Tenth Cause of Action) and violated the Unfair Competition Law (Fifteenth Cause of Action). Second Am. Compl., Dkt. 66, Feb. 1, 2012. Plaintiff also asserts claims for civil penalties under the Labor Code Private Attorney General Act ("PAGA") (Seventh Cause of Action).

In 2012, Plaintiff filed a motion seeking partial summary judgment on her Eleventh and Thirteen Causes of Action. By order dated February 25, 2013, the court denied Plaintiff's motion because Plaintiff had not met her initial burden to establish her contention that she was required to work during her leave or her claim that she was wrongfully denied reinstatement to a comparable position once she returned from leave. Dk. No. 96.

## II. STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. *Id*. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324. A "genuine issue" of material fact for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against

1    whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
2    574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as
3    conclusory or speculative testimony in affidavits and moving papers, is not sufficient to
4    defeat summary judgment. *Id.* ("When the moving party has carried its burden under Rule 56(c),
5    its opponent must do more than simply show that there is some metaphysical doubt as to the
6    material facts."); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead,
7    the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R.
8    Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id.*

III.   DISCUSSION

    A.   Ninth Cause of Action: Pregnancy Discrimination

Plaintiff's claim for pregnancy discrimination under the California Fair Employment and Housing Act ("FEHA") is subject to the burden shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). Under this framework, a plaintiff must first establish a prima facie case of discrimination, which requires that she prove that (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests discriminatory motive. *See Fu v. Walker Parking Consultants*, 796 F. Supp. 2d 1148, 1155 (N.D. Cal. 2011).

If the employee plaintiff establishes her prima facie case, the burden shifts to the employer defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Guz*, 24 Cal. 4th at 355-56. Once an employer produces evidence of a legitimate, nondiscriminatory reason for the adverse employment action, a plaintiff

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4

can survive summary judgment only by providing "significant, substantial evidence" that the employer's stated reason for the challenged action is pretextual and that the real reason is discrimination. *Fu*, 796 F. Supp. 2d at 1155. "The ultimate burden of persuading [the] trier of fact that [the] defendant intentionally discriminated against [the] plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The primary basis for Defendants' motion is that Plaintiff cannot establish a triable issue as to whether IBM's stated reasons for termination are a pretext for discrimination. To prove pretext, Plaintiff must "rebut the employer's stated nondiscriminatory reason with substantial evidence of its falsity or present other evidence suggesting a discriminatory basis, or some combination of the two such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1004-1005 (1997).

Here, Plaintiff does not dispute that IBM's 2009 layoffs were driven by economic factors. Nor does Plaintiff dispute Iyer's rationale for reducing the size of his teams. Nor does she dispute that Iyer performed a comparative ranking of skills and performance in which she ranked lowest. Instead, Plaintiff presents evidence of alleged pretext, which takes four forms. First, Plaintiff testified at her deposition that Iyer disclosed his alleged bias during a conversation with her:

> A. So when I first told Venkat that I was pregnant, he had made a comment saying that he doesn't see how -- he said that -- he has two kids of his own. So he said that he can't imagine how I can do it. Having his two kids is already hard enough; he can't imagine how I'd be able to balance life and work with four kids, because that would be my fourth child. He also asked if I was going to have any more kids.
>
> Q. When did he ask you if you were going to have any more kids?
>
> A. In the same conversation, when I told him that I was pregnant.
>
> Q. And what did you -- what was your response?
>
> A. I said I wasn't sure.

Exhibit 2 to Bayer Decl. (Moua Depo., 86:6-20).

Second, Plaintiff contends that Iyer "infected" the selection process with his alleged bias. Pl.'s Opp. 10. According to Plaintiff, the day she returned to work after taking one day of

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
5

disability leave, Iyer asked her what her maternity plans were. Moua Depo. 44:12-21. Plaintiff told Iyer she planned to go on maternity leave in mid-March. *Id*. 44:7-10. In response, Iyer told Plaintiff "[h]e wanted [her] to transition all of her responsibilities over to the rest of the team members by March, early—the first week of March." *Id*. 44: 13-15. Iyer acknowledges having a conversation with Plaintiff about transferring her work responsibilities to another employee. Iyer Depo. 31-32 (Dkt. No. 167-1, 24-25. Iyer testified that it wasn't a transfer "at that point of time. It was more a person filling in the gap in their absence." *Id*. 31:5-8. However, by then, Iyer had "zeroed in and identified" employees for layoff. *Id*. 31:11.

Plaintiff also contends that Iyer carried his bias into the decision-making process by, among other things, informing his human resource partner, Mary Crowley ("Crowley"), and other managers, of Plaintiff's pregnancy status. Iyer asked "should a person who is pregnant and on a maternity leave be considered?" Iyer Depo. (Dkt. No. 167-1), 18. The feedback Iyer received was that "if a person is pregnant or not, that should not be considered as a decision for the RAs. It should be on purely on merit." *Id*. Iyer spoke to Crowley in person regarding Plaintiff. He described the conversation as follows:

> A.   I talked about a lot of things. I talked about her in comparison with other people and why we were trying to zero in on her as the possible candidate.
>
> I also talked to her about the fact that May Moua was in maternity leave, and I also wanted to get -- get info -- so I was just generally talking about the whole scenario, what -- who are the people who I had identified, why am I making the decisions I am taking; and also the fact that Moua is in maternity leave, and I asked her for guidance on what does one do under such circumstances.

*Id*. 20. Iyer also participated in a telephonic conference with other managers to discuss his decision to put Plaintiff on the list for layoff. *Id*. 59. Iyer told the managers about Plaintiff's "past performance. The role that is playing, what they are doing in that role, what is expected, all those – what was key to that was provided." *Id*. 61. Iyer also informed the group of managers that Plaintiff would soon be out on maternity leave:

> Q.   Were they informed that May Moua was going to be taking

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
6

|   |   |
|---|---|
| 1 | leave? |
| 2 | A. Yes. |
| 3 | Q. Why were they informed that May Moua was going to be taking leave? |
| 4 | A. Why were they informed?  Because we – we had to tell them that she is -- she is pregnant and she has got -- at some point in time she would have to go on maternity leave. |
| 5 |  |

*Id*.

Third, Plaintiff contends that Iyer gave "shifting" explanations for selecting Plaintiff for layoff.  Plaintiff points to the fact that Iyer was told to layoff one person from his technical team and one person from the functional team, but ultimately only Plaintiff was selected for layoff. Pl.'s Opp. 12:11-15.  As another example, Plaintiff asserts that Iyer and Crowley told her that her performance and seniority were not factors in the layoff decision, but then shortly thereafter Iyer told her that her performance was an issue, but not heavily weighted.  *Id*. 12:16-19.   Iyer also allegedly gave a different explanation for his decision during his deposition:

> So the next subset was it whittles down to basically three people for me, which was Madhuri, Aris and [May]; and when I started looking at them, I started trying to consider within my list what I -- did I consider as primary needs for these individuals?  When I go in 2009 and the challenges I have, what should -- are the critical statistics criteria for them to perform -- skill factors that they need.  Identify those skills factors and then I evaluate each of those individuals against those skill factors.
>
> I also took into consideration the performance evaluation curve, which had happened in the previous three years, as a benchmark; and putting these two aspects together, I -- I came with a weight mean and said that given what I had -- what I see as my pie plan in the future, my business in the future, given the capability of these three individuals who -- from whom I have to take a decision, who -- which would be that person which if I -- obviously, as a manager, it's always a tough decision to let somebody go.  But given that situation, which of these three people, if I had to let go, I would – I would be able to manage with the least amount of indecision and the most whole efficiency will be more seamless.

Dkt. No. 167-1, 37-38.

Fourth, Plaintiff contends that Iyer excluded her from a career advancement opportunity

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
7

1    after he learned of her pregnancy—the opportunity to attend a conference or convention in the Bay
2    Area. Iyer asked Plaintiff if the two and a half hour drive to the event "would be too much for
3    [her] because [she] was pregnant." Moua Depo. 169:4-7. Plaintiff told Iyer that it would not be
4    too much, but Iyer selected Madhur and Aris to attend the event. *Id*. 169:13-14.

5        When considered individually and in isolation, each of the four forms of evidence
6    described above may not amount to substantial evidence of prextext. *See e.g.*, *Reyes v. San
7    Francisco Unified School Dist.*, No. 11-4628 YGR, 2012 WL 4343784, at * (N.D. Cal. Sept. 20,
8    2012) (granting summary judgment in favor of defendants where plaintiff's only evidence of
9    discrimination was a stray comment). Defendants also makes a reasonable argument that Iyer's
10   deposition testimony could be viewed as innocuous. But, viewing the four forms of evidence
11   collectively in the light most favorable to Plaintiff, the court concludes Plaintiff has presented
12   sufficient evidence to withstand Defendants' summary judgment motion. A termination decision
13   that is contemporaneous with maternity leave may support an inference of a causal connection
14   between the two events. *Liu v. Amway*, 347 F.3d 1125, 1137 (9th Cir. 2003). Further, Plaintiff
15   has presented a combination of circumstantial evidence of pretext and discriminatory motive such
16   that a reasonable trier of fact could conclude Iyer engaged in intentional discrimination.
17   Defendants' arguments to the contrary go to the weight of the evidence and the reasonable
18   inferences to be drawn from the evidence. For example, Defendants contend that Iyer's
19   explanations for selecting Plaintiff for layoff were not "shifting" and instead provided "additional
20   details." Defs.' Motion 10. The trier of fact must ultimately assess the witnesses' credibility,
21   weigh the evidence, and make that determination. *See Payne v. Norwest Corp.*, 113 F.3d 1079,
22   1080 (9th Cir. 1997). Defendants' motion for summary judgment as to the ninth cause of action
23   for pregnancy discrimination will be denied.

24       B.    Eighth and Tenth Through Fifteenth Causes of Action

25       Plaintiff's evidence of pretext discussed above raises disputes of material fact that preclude
26   summary judgment as to Plaintiff's eighth cause of action for pregnancy discrimination in
27   violation of the California Constitution; tenth cause of action for wrongful termination in violation
28   Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

of public policy; eleventh cause of action for interference with rights under the CFRA; twelfth cause of action for retaliation for taking leave under the CFRA; thirteenth cause of action for interference with rights under the PDLL; fourteen cause of action for retaliation for taking leave under the PDLL; and fifteen cause of action for violation of the Unfair Competition Law.

### C. Seventh Cause of Action: Penalties

During discovery, Plaintiff provided Defendants with information regarding the damages and penalties she seeks on behalf of herself and other PAGA members in the seventh cause of action. Defendants raise numerous challenges to the claims for penalties Plaintiff identified in her interrogatory responses. First, Defendants contend that Plaintiff is not entitled to statutory penalties pursuant to California Labor Code section 203[1] (waiting time penalties) because PAGA provides for only civil penalties for the PAGA claims Plaintiff asserts. Defendants contend that the sole remedy authorized under PAGA is civil penalties under section 2699. In response, Plaintiff contends that she is entitled to "capture" section 203 waiting time penalties under section 256. Pl.'s Opp. 17. Section 256 penalties, however, are unavailable because that section applies only to wage disputes arising in connection with seasonal labor. *See* Labor Code §§ 250-256. Plaintiff is accordingly barred from seeking statutory penalties pursuant to section 203 at trial.

Second, Defendants similarly contend that statutory penalties under section 226(e) (failure to provide accurate itemized wage statements) are unavailable under PAGA. Although Plaintiff's argument is somewhat unclear, Plaintiff appears to concede the argument because she states that "PAGA's section 2699(f) controls." Pl.'s Opp. 18. Accordingly, the court will bar Plaintiff from seeking section 226(e) penalties at trial.

Third, Defendants contend that Plaintiff is barred from seeking section 2699(f) "default" penalties for three separate and independent reasons: (1) the Second Amended Complaint makes no mention of penalties under section 2699(f) and instead references only section 2699(a); (2) section 2699(f) "default" penalties are not available because there is a separate section that

---

[1] All subsequent statutory references are to the California Labor Code.

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
9

specifically authorizes penalties for the particular Labor Code violations Plaintiff alleges, *i.e.* section 558(a) penalties for section 558(a) violations; and (3) the claim for "default" penalties fails to the extent it is tied to alleged violations of Sections 3A and 7 of Wage Order 4-2001 because Plaintiff did not allege violations of these particular Wage Order provisions in the Second Amended Complaint.

In response, Plaintiff argues that the Second Amended Complaint, when read as a whole, placed Defendants on fair notice that Plaintiff is seeking civil penalties for Labor Code violations, even if it did not specifically cite to section 2699(f), as well as for violations of Section 3A and 7 of Wage Order 4-2001. The court agrees and accordingly will not preclude Plaintiff from seeking section 2699(f) penalties on this basis.

Next, Plaintiff appears to concede that section 2699(f) provides a "default" penalty only for alleged violations of Labor Code provision for which no penalty is provided. Plaintiff represents that she "seeks subsection (a) penalties for violations of Labor Code sections that carry their own penalties and subsection (f) penalties for violations of Labor Code sections that do not." Pl.'s Opp. 20. Plaintiff, however, also contends that she is entitled to recover both 2699(f) "default" penalties and 558(a) penalties because section 558(c) provides that "civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." Labor Code § 558(c). Plaintiff's circular argument is unpersuasive; section 2699(f) default penalties are not "provided by law" because section 558(a) penalties are available. At trial, the court will preclude Plaintiff from recovering 2699(f) penalties for the alleged section 558(a) violation.

Fourth, Defendants contend that Plaintiff is not entitled to "heightened" penalties under sections 210(a), 558(a), and 2699(f) because there is no evidence that IBM was notified by a court or commissioner of a Labor Code violation. In response, Plaintiff cites to allegations in the Second Amended Complaint regarding a previous suit against IBM for failure to classify employees properly. Pl.'s Opp. 22-23. Plaintiff's argument is unpersuasive. Allegations in the Second Amended Complaint are not evidence. Moreover, Plaintiff has not shown that this prior suit against IBM put IBM on notice of the particular violations alleged in this lawsuit. Therefore,

Plaintiff is not entitled to heightened penalties. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008).

Lastly, Defendants argue that Plaintiff is not entitled to prejudgment interest on her PAGA penalty claims. Plaintiff does not address Defendants' final argument. Therefore, the court will grant Defendants' motion as to prejudgment interest on Plaintiff's PAGA penalty claims.

IV. ORDER

For the reasons set forth above, Defendants' motion for partial summary judgment is DENIED, except that Plaintiff is hereby precluded from attempting to recover the following at trial: statutory penalties pursuant to Labor Code section 203 and 226(e); 2699(f) penalties for the alleged section 558(a) violation and for any other violation of Labor Code sections that provide penalties; "heightened" penalties; and prejudgment interest on PAGA penalty claims. The court sets a preliminary pretrial conference for May 2, 2019, at 10:00 a.m. The parties shall file a joint preliminary pretrial conference statement no later than April 22, 2019.

**IT IS SO ORDERED.**

Dated: March 22, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:10-cv-01070-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
11